## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Northern Division

| | |
|---|---|
| **CLAIRE COLON** ) | |
| **1671 Hoolana Street** ) | |
| **Pearl City, HI 96782** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **Civil Action No.17-cv-00775-JFM** |
| **v.** ) | |
| ) | |
| **UNITED STATES OF AMERICA** ) | |
| **Serve: Stephen M. Schennin** ) | |
| **Acting United States Attorney** ) | |
| **36 S. Charles Street 4th Fl.** ) | |
| **Baltimore, MD 21201** ) | |
| ) | |
| **And** ) | |
| ) | |
| **DEPARTMENT OF DEFENSE** ) | |
| **Serve: Stephen M. Schennin** ) | |
| **Acting United States Attorney** ) | |
| **36 S. Charles Street 4th Fl.** ) | |
| **Baltimore, MD 21201** ) | **FIRST AMENDED COMPLAINT** |
| ) | |
| **And** ) | |
| ) | |
| **DAVID KASSOP, M.D.** ) | |
| **2817 Reilly Road** ) | |
| **Fort Bragg, NC 28310** ) | |
| ) | |
| **And** ) | |
| ) | |
| **STEVEN BERKOWITZ** ) | |
| **2018 Old Willow Way** ) | |
| **Crofton, MD 21114** ) | |
| ) | |
| Defendants**.** ) | |
| ) | |

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Claire Colon ("Plaintiff"), by and through undersigned counsel, and for her Complaint against Defendants (1) the United States of America, (2) the Department of Defense, (3) Dr. David Kassop, and (4) Dr. Steven Berkowitz.

## NATURE OF CASE

This is an action for damages Plaintiff sustained as the result of Defendants' acts and omissions involving unauthorized access, disclosure, and use of Plaintiff's private, protected health information.

## PARTIES

1.      Plaintiff Claire Colon is a citizen and resident of Pearl City, Hawaii.

2.      Defendant United States of America is sued for Plaintiff's injuries its employees' negligent or wrongful acts and omissions caused. These employees were acting within the scope of their employment under circumstances where the United States, if a private person, would be liable to Plaintiff in accordance with the laws of the Maryland.

3.      Defendant the Department of Defense is a department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

2.      Upon information and belief, Defendant Dr. David Kassop was and is an adult individual and a resident and a citizen of North Carolina, residing at 309 Stornoway Dr, Southern Pines, NC, 28387, is employed by the Department of the Army at Fort Bragg, North Carolina, and is licensed to practice medicine in the State of Maryland. Dr. Kassop is being sued in his individual capacity.

3.      Upon information and belief, Defendant Dr. Steven Berkowitz was and is an adult individual and a resident and citizen of Maryland, residing at 2018 Old Willow Way, Crofton, MD 21114, is employed by the Department of the Army at Fort Meade, Maryland, and is a

psychologist licensed to practice in the State of Maryland. Dr. Berkowitz is being sued in his individual capacity.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this action under pursuant to 28 U.S.C. § 1331 because it is a case arising under the laws of the United States and the Constitution of the United States.

5.      This action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80.

6.      The Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b). A substantial part of the events and conduct giving rise to the obligations, liabilities, breaches, and/or violations of law complained of occurred in or emanated from this District.

8.      Plaintiff learned of Dr. Kassop and Dr. Berkwotiz's unauthorized access of her medical records in November of 2015. On February 23, 2016, Plaintiff timely submitted a SF-95 claim with the Department of the Army for damages sustained from the unlawful access of her private and confidential health information by Dr. Kassop and Dr. Berkowitz. As of date, six months have passed since the submission of Plaintiff's SF-95 claim, and Plaintiff's SF-95 claim is still pending.

## FACTS

9.      Plaintiff joined the Army in May 2004 and began active-duty service in June 2004. While serving in the Army, Plaintiff met and married Julio Colon-Gonzalez ("Husband") on August 8, 2005. Plaintiff and Husband remain married to this day.

10.     While on active duty, Plaintiff deployed to Iraq where she was assaulted by three fellow U.S. soldiers from her unit. Plaintiff returned to the United States from Iraq in September 2006. The trauma Plaintiff endured while in combat was compounded by post-partum depression following the pregnancies of her two oldest children, born in August 2007 and January 2009. Struggling with Post-Traumatic Stress Disorder ("PTSD") following her time in combat, Plaintiff sought professional help through the Army to address her mental health issues.

11.     Plaintiff medically retired from the Army as a Captain with an Honorable Discharge on April 22, 2014. Plaintiff was retired from active duty based on medical diagnoses she received from the Army and the Department of Defense as a result of her time during combat.

12.     Plaintiff engaged in an extramarital affair with Major ("MAJ") Christian Wollenburg beginning in June 2009. MAJ Wollenburg was deployed to Afghanistan from June 2010 to July 2011. As a result of the extramarital affair, on October 2, 2010, Plaintiff and MAJ Wollenburg's daughter ("Minor Child") was born in Bethesda, Maryland.

13.     In 2012, Plaintiff ceased communications with MAJ Wollenburg. MAJ Wollenburg was angered by Plaintiff's refusal to speak with him and developed a personal animus against Plaintiff, displaying anger and threatening behavior towards Plaintiff.

14.     On September 12, 2013, a District of Columbia family court judge resolved a paternity suit by ruling MAJ Wollenburg is Minor Child's father. Thereafter, on September 26, 2013, Plaintiff filed a Complaint for Custody of a Minor Child in the Superior Court of the District of Columbia Family Court Domestic Relations Branch ("DC Family Court"). This initiated a custody proceeding lasting over two years and involving extensive discovery, filings, numerous hearings, and several court orders.

15.     Simultaneous to the custody proceedings, the Department of the Army appointed

Lieutenant Colonel ("LTC") Ralph Taylor to investigate MAJ Wollenburg's adulterous

relationship with Plaintiff to determine whether MAJ Wollenburg violated the Uniform Code of

Military Justice ("UCMJ").

16.     MAJ Wollenburg harbored considerable anger and resentment toward Plaintiff

and chose to pursue the child custody litigation based on this personal animus, not on what was

in the best interest of Minor Child. Upon information and belief, on or about November 2013,

MAJ Wollenburg contacted Dr. Kassop and asked Dr. Kassop to obtain confidential protected

health information on Plaintiff's mental health status to use in both the DC Family Court

proceeding and in the adultery investigation. Dr. Kassop was stationed at Walter Reed Army

Medical Center as an internist and cardiologist in November 2013. Dr. Kassop and MAJ

Wollenburg are close friends; Dr. Kassop and MAJ Wollenburg were roommates at the U.S.

Military Academy at West Point in 1999, and MAJ Wollenburg was a groomsman in Dr.

Kassop's wedding.

17.     As a result of his conversations with MAJ Wollenburg, on or about November 22,

2013, at approximately 6:08 PM, Dr. Kassop accessed Plaintiff's health protected information

through the Armed Forces Health Longitudinal Technology Application (AHLTA). AHLTA is

the electronic medical record system used by the Department of Defense and the Department of

the Army. Dr. Kassop accessed Plaintiff's previous encounters, clinical notes, medications,

laboratory results, and radiology records. Dr. Kassop accessed Plaintiff's medical records for at

least forty-two (42) minutes. Dr. Kassop was able to access Plaintiff's protected health

information reflected in the Department of Defense records. Dr. Kassop exceeded his authorized

access to the AHLTA and reviewed Plaintiff's protected health information without

authorization or authority. Dr. Kassop never treated Plaintiff. Plaintiff did not give consent to Dr. Kassop to access her health information.

18.     Upon information and belief, Dr. Kassop agreed to access Plaintiff's private and confidential medical records to assist MAJ Wollenburg in the adultery investigation and his custody case in the DC Family Court, and Dr. Kassop disclosed Plaintiff's medical records, or existence of a medical record, to MAJ Wollenburg.

19.     Upon information and belief, MAJ Wollenburg provided LTC Taylor Plaintiff's protected health information Dr. Kassop accessed and provided him.

20.     Upon information and belief, in February 2015, Dr. Berkowitz, a psychologist at Kimbrough Ambulatory Medical Center on Fort Meade, MD, and MAJ Wollenburg's mental health provider, instructed employees Kiaya Jackson and Jessica Hall to access, view, and print Plaintiff's medical records for him. Upon information and belief, Dr. Berkowitz accessed Plaintiff's medical records upon  the request of MAJ Wollenburg. Dr. Berkowitz exceeded his authorized access to AHLTA and reviewed Plaintiff and Minor Child's protected health information without authorization or authority. Plaintiff and Minor Child did not give consent to Dr. Berkowitz, or his employees, to access health information. Neither Plaintiff nor Minor Child was ever Dr. Berkowitz's patient. Upon information and belief, Dr. Berkowitz agreed to access Plaintiff and Minor Child's records to assist MAJ Wollenburg in his pending custody case and adultery investigation, and Dr. Berkowitz disclosed Plaintiff's medical records, or existence of a medical record, to MAJ Wollenburg.

21.     On February 24, 2015, LTC Taylor issued his investigative report on whether an adulterous relationship existed between Plaintiff and MAJ Wollenburg. LTC Taylor determined MAJ Wollenburg's conduct, while amounting to adultery based on a civilian and moral standard,

did not meet the standard for adultery as described in the UCMJ because the relationship was not prejudicial to the good order and discipline of the service. LTC Taylor's investigative report detailed Plaintiff's private and confidential mental health history.

22.     On about May 2015, one month prior to the child custody hearings, Dr. Berkowitz himself accessed Plaintiff and Minor Child's protected heath records. Dr. Berkowitz again accessed Plaintiff and Minor Child's protected health information on or about November 2015.

23.     In anticipation of the custody hearings in June and July of 2015, MAJ Wollenburg included Dr. Kassop as a fact witness on the basis he was qualified to testify because he is a physician. MAJ Wollenburg also requested LTC Ralph Taylor as a fact witness to testify about Plaintiff's mental health.

24.     Upon information and belief, MAJ Wollenburg disseminated Plaintiff's private health records to LTC Taylor, MAJ Wollenburg's attorneys, Plaintiff's attorneys, the DC Family Court, and unknown others.

25.     The DC Family Court held several hearings on the custody case throughout June and July, 2015. During the custody proceedings, MAJ Wollenburg attempted to use Plaintiff's history of mental illness for the DC Family Court to award him sole legal and physical custody of Minor Child. In MAJ Wollenburg's pleadings, he asserted false information on the status and extent of Plaintiff's mental health issues and history in an attempt to gain sole custody. This effort caused Plaintiff mental anguish and humiliation. Upon information and belief, MAJ Wollenburg's basis for challenging Plaintiff's competence and medical condition derived from the information received from Dr. Kassop and Dr. Berkowitz.

26.     On December 24, 2015, the DC Family Court awarded permanent sole legal custody to Plaintiff and Husband. In awarding sole legal custody to Plaintiff and Husband, the

DC Family Court recognized that MAJ Wollenburg raised numerous concerns about Plaintiff's

mental health. The DC Family Court acknowledged that it denied MAJ Wollenburg's request

regarding Plaintiff's specific diagnosis. The DC Family Court determined Plaintiff is an effective

parent and, based on the experts at trial, concluded there were no concerns about her ability to be

a mother.

27.     On or about August of 2015, Plaintiff suspected MAJ Wollenburg had accessed

her protected health information and asked the Army to investigate the matter. Plaintiff gave

investigators consent to search who has accessed her health information. On or about November

16, 2015, the Army Criminal Investigative Division informed Plaintiff it discovered

unauthorized breaches into Plaintiff and Minor Child's protected medical records, including

unauthorized access by Dr. Kassop and Dr. Berkowitz. Upon information and belief, the Army

continues to employ Defendants Dr. Kassop, Dr. Berkowitz, and MAJ Wollenburg, and Dr.

Kassop and Dr. Berkowitz continue to have access to Plaintiff's confidential and protected health

information.

28.     Dr. Kassop and Dr. Berkowitz were acting within their scope of their employment

at the time of the unauthorized access to and disclosure of Plaintiff's medical records.

## COUNT I-NEGLIGENT ACCESS AND DISCLOSURE OF PROTECTED
## HEALTH INFORMATION
### (Defendant United States of America)

29.     All preceding paragraphs are incorporated by reference as though fully set forth

herein.

30.     At all times relevant herein, Dr. Kassop and Dr. Berkowitz were responsible for

accessing records in AHLTA in compliance with Department of Defense policies and

procedures, the Maryland Confidentiality of Medical Records Act, the Privacy Act, and the Health Insurance Portability and Accountability Act ("HIPAA").

31.     At all times relevant herein, as medical professionals employed by the Department of the Army, Dr. Kassop and Dr. Berkowitz's duties included, but were not limited to, the use of ordinary care in accessing protected health information with proper authority and in using and disseminating protected health information. Dr. Kassop and Dr. Berkowitz were responsible for accessing records in AHLTA in compliance with Department of Defense policies and procedures, the Maryland Confidentiality of Medical Records Act, the Privacy Act, and HIPAA, and had a duty to protect the privacy and confidentiality of protected health information.

32.     In the breach of these duties, Dr. Kassop and Dr. Berkowitz failed at all relevant times to exercise reasonable care in protecting the privacy and confidentiality of protected health information. Dr. Kassop and Dr. Berkowitz breached their duties in a number of ways, including but not limited to, failing to use ordinary care in accessing, without authorization or authority, Plaintiff's protected health information, and failing to use ordinary care by disclosing and disseminating Plaintiff's protected health information to MAJ Wollenburg.

33.     As a direct and proximate result of Dr. Kassop and Dr. Berkowitz's actions, Plaintiff has been damaged and will continue to suffer damages, including, but not limited to, mental distress, emotional trauma, fear of receiving medical treatment, embarrassment, humiliation, and weekly therapy sessions.

34.     The actions or omissions by federal employees Dr. Kassop and Dr. Berkowitz described herein constitute the tort of negligence under the laws of Maryland.

35.     Under the Federal Torts Claim Act, Defendant United States of America is liable for these actions or omissions.

## COUNT II-NEGLIGENT SUPERVISION
### (Defendant United States of America)

36.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

37.     The Honorable James Mattis is the Secretary of Defense. At all times relevant herein, as the head of an agency that also serves as a health care provider, Secretary Mattis was responsible for the policies and procedures concerning Department of Defense employees' access to protected medical information in AHLTA.

38.     At all times relevant herein, Secretary Mattis had a duty to exercise reasonable care to ensure Department of Defense employees accessed and disclosed individual records in AHLTA only with authority and authorization. Secretary Mattis' duties included, but were not limited to, the use of ordinary care in: properly training physicians and personnel on the protection of individuals' privacy and confidentiality, particularly concerning health records; implementing appropriate measures for the protection of patients after learning of an employee's misuse or abuse of an individual's protected health information; complying with all requirements HIPAA, the Federal Privacy Act, and all Department of Defense instructions, directives, policies, and procedures on privacy and health records; timely discovering unauthorized access to an individual's medical records; implementing and enforcing policies and procedures to restrict access to identifiable health information and limit open and unlimited access areas by any medical personnel of any individual; ensure records are protected against unauthorized access or use; and implement safeguards to ensure the security and confidentiality of individuals' records.

39.     In the breach of these duties, Secretary Mattis failed at all relevant times herein to exercise reasonable care to ensure employees accessed individual records in AHLTA only with authority and authorization. Secretary Mattis breached these duties, in a number of ways,

including but not limited to: providing deficient training and instruction to employees; not following mandated policies and procedures; failing to take appropriate steps and implement and measures for the protection of Plaintiff's privacy and confidentiality, both before the unauthorized access, and after learning of the unauthorized access; and failing to ensure AHLTA contains safeguards to ensure the security and confidentiality of medical records.

40.     Secretary Mattis permitted the unauthorized access and disclosure of Plaintiff's protected health information. Secretary Mattis knew or should have known that Dr. Kassop and Dr. Berkowitz were capable of accessing Plaintiff's protected health information without authority or authorization. Secretary Mattis permitted, or failed to prevent, the unauthorized access and disclosure of Plaintiff's protected health information upon premises and with instrumentalities under his control.

41.     As a direct and proximate result of Dr. Kassop and Dr. Berkowitz's actions, Plaintiff has been damaged and will continue to suffer damages, including, but not limited to, mental distress, emotional trauma, fear of receiving medical treatment, embarrassment, humiliation, and weekly therapy sessions.

42.     The actions or omissions by Secretary Mattis described herein constitute the tort of negligence under the laws of Maryland.

43.     Under the Federal Torts Claim Act, Defendant United States of America is liable for these actions or omissions.

## COUNT III-PRIVACY ACT- 5 U.S.C. § 552a
### (Defendant Department of Defense)

44.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

45.     Plaintiff was at all material times an individual protected by the Privacy Act, 5 U.S.C. § 552a.

46.     The Department of Defense, as a military department, was at all material times a federal government agency covered by the Privacy Act.

47.     The Privacy Act requires the Department of Defense to (1) not disclose medical records to persons who do not need to know the contents an individual's records without the individual's consent, (2) establish appropriate safeguards to ensure the security and confidential records, and (3) protect against anticipated threats to security or integrity which could result in substantial harm, embarrassment, or inconvenience to an individual.

48.     The Department of Defense, through its officers, agents, and/or employees acting within the scope of their employment, violated the Privacy Act by engaging in the conduct described herein.

49.     Dr. Kassop and Dr. Berkowitz accessed Plaintiff's "record" within the meaning of the Privacy Act, as the information accessed, disclosed, and used, was about Plaintiff and contained Plaintiff's name and identifying information.

50.     Dr. Kassop and Dr. Berkowitz accessed Plaintiff's records from a "system of records" within the meaning of the Privacy Act, as AHLTA stores a group of records under the control of the Department of Defense from which information is retrieved by an individual's name and/or identifying information.

51.     Dr. Kassop and Dr. Berkowitz accessed, used, and disclosed Plaintiff's protected health information, contained in a system of records, without authorization, authority, or consent. Dr. Kassop and Dr. Berkowitz accessed and retrieved Plaintiff's records and information by reference to her name and/or personal identifier. Dr. Kassop and Dr. Berkowitz disseminated

Plaintiff's private health records protected by the Privacy Act to MAJ Wollenburg, and, upon information and belief, MAJ Wollenburg disseminated Plaintiff's private health records to LTC Taylor, MAJ Wollenburg's attorney's, Plaintiff's attorney's, the DC Family Court, and unknown others. This information included, but is not limited to, records on Plaintiff's mental health history. Dr. Kassop and Dr. Berkowitz failed to secure written authorization from Plaintiff prior to disclosing the specific information detailed above. No exception permitted Dr. Kassop and Dr. Berkowitz's disclosures. Dr. Kassop, Dr. Berkowitz, MAJ Wollenburg, LTC Taylor, MAJ Wollenburg's attorneys, Plaintiff's attorneys, and the DC Family Court had no need to know the contents of Plaintiff's protected medical records.

52.     The Department of Defense failed to ensure appropriate safeguards in AHLTA, as Dr. Kassop and Dr. Berkowitz, neither of whom ever treated Plaintiff, were able to access her protected medical records. Upon information and belief, any medical professional employed by the Department of Defense can access any medical record by any patient ever seen by a Department of Defense medical provider. This extensive open and unlimited access, regardless of the need for the information, and lack of controls of who can access medical information violates the Privacy Act and controlling Department of Defense policies and procedures.

53.     In violation of the Privacy Act, the Department of Defense had no controls, policies, procedures, or safeguard to detect unauthorized access of medical records in AHLTA. The Department of Defense only learned of the breaches described herein because Plaintiff suspected possible unauthorized access to her medical records and requested an investigation.

54.     Dr. Kassop and Dr. Berkowitz acted in an intentional and willful manner in disclosing Plaintiff's medical record, as the purpose of obtaining Plaintiff's health records was

for MAJ Wollenburg to use against Plaintiff in the D.C. Family Court proceeding and in LTC Taylor's investigation.[1]

55.     Plaintiff suffered actual damages when she paid for medical services and transportation to and from medical services to address the trauma she suffered as a result of the intentional and/or willful disclosures of her private health records.

56.     Dr. Kassop and Dr. Berkowitz's disclosures had an adverse effect on Plaintiff. As a result of Dr. Kassop and Dr. Berkowitz's violation of the Privacy Act, Plaintiff has suffered adverse and harmful effects and actual damages, including, but not limited to, mental distress, emotional trauma, fear of receiving medical treatment, embarrassment, humiliation, and costs for therapy sessions. Accordingly, the Department of Defense is liable for all actual and statutory damages, attorney's fees, and costs.

## COUNT IV- BIVENS VIOLATION OF THE NINTH AMENDMENT
### (Defendants Dr. Kassop and Dr. Berkowitz)

57.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

58.     Plaintiff has a fundamental right to privacy and confidentiality of her protected health information and medical records guaranteed by the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution.

59.     Dr. Kassop and Dr. Berkowitz violated Plaintiff's constitutional rights by intentionally accessing, disclosing, and using Plaintiff's protected health information without authorization or authority. Dr. Kassop and Dr. Berkowitz knew or should have known they were

---

[1] *See* Footnote 2.

violating Plaintiff's constitutional rights in accessing, disclosing, and using her protected health information.

60.     In accessing Plaintiff's protected health information for MAJ Wollenburg's personal use, Dr. Kassop and Dr. Berkowitz were motivated by an evil motive and intent and acted with a reckless or callous indifference to Plaintiff's federally protected rights.

61.     Dr. Kassop and Dr. Berkowitz acted under color of federal law in their conduct set forth herein.

62.     Dr. Kassop and Dr. Berkowitz's conduct in violation Plaintiff's constitutional right gives rise to a cause of action for damages directly under the Constitution under the rule of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

63.     As a result of Dr. Kassop and Dr. Berkowitz's willful and malicious violations of Plaintiff's constitutional rights, Plaintiff has been damaged and will continue to suffer damages, including, but not limited to, mental distress, emotional trauma, fear of receiving medical treatment, embarrassment, humiliation, and weekly therapy sessions. Accordingly, Plaintiff is entitled to all recoverable damages, including punitive damages.

## COUNT V - VIOLATION OF MARYLAND CONFIDENTIALITY OF MEDICAL RECORDS ACT
### (Defendants Dr. Kassop and Dr. Berkowitz)

64.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

65.     Dr. Kassop and Dr. Berkowitz's unauthorized access, disclosure, and use of Plaintiff's protected health information violated the Maryland Confidentiality of Medical Records Act ("the Act"), Md. Code Ann. § 4-301, *et seq* of the Health General Article.

66.     Pursuant to the Act, Dr. Kassop and Dr. Berkowitz were required to keep medical records confidential.

67.     Dr. Kassop and Dr. Berkowitz knowingly violated the Act.

68.     In violation of the Act, Dr. Kassop and Dr. Berkowitz knowingly and willfully requested and obtained Plaintiff's medical records. Dr. Kassop and Dr. Berkowitz transmitted or communicated information in Plaintiff's medical record, including an acknowledgement that a medical record on Plaintiff exists, to MAJ Wollenburg. Dr. Kassop and Dr. Berkowitz's disclosures of Plaintiff's medical records were in bad faith, as the disclosures were not for a lawful purpose and were intended to assist MAJ Wollenburg to Plaintiff's detriment. Neither Dr. Kassop nor Dr. Berkowitz had Plaintiff's authorization to disclose Plaintiff's medical records.

69.     Dr. Kassop and Dr. Berkowitz's access of and disclosure of Plaintiff's medical records were not authorized by the Act and were not otherwise permitted by law.

70.     As a result of Dr. Kassop and Dr. Berkowitz's violation of the Act, Plaintiff has suffered adverse and harmful effects and damages, including, but not limited to, mental distress, emotional trauma, fear of receiving medical treatment, embarrassment, humiliation, and costs for therapy sessions. Accordingly, Plaintiff is entitled to all recoverable damages, including statutory damages, attorney's fees, and costs.

### COUNT VI-NEGLIGENT ACCESS AND DISCLOSURE OF PROTECTED HEALTH INFORMATION[2]
### (Defendants Dr. Kassop and Dr. Berkowitz)

71.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

---

[2] The Federal Rules of Civil procedure allow parties to plead claims in the alternative: "[a] party may also state as many separate claims or defense as the party has regardless of consistency and whether based on legal [or] equitable grounds." Fed. R. Civ. P. 8(e)(2).

72.     At all times relevant herein, Dr. Kassop and Dr. Berkowitz were responsible for accessing records in AHLTA in compliance with Department of Defense policies and procedures, the Maryland Confidentiality of Medical Records Act, the Privacy Act, and the Health Insurance Portability and Accountability Act ("HIPAA").

73.     At all times relevant herein, Dr. Kassop and Dr. Berkowitz's duties included, but were not limited to, the use of ordinary care in accessing protected health information with proper authority and in using and disseminating protected health information. Dr. Kassop and Dr. Berkowitz were responsible for accessing records in AHLTA in compliance with Department of Defense policies and procedures, the Maryland Confidentiality of Medical Records Act, the Privacy Act, and HIPAA, and had a duty to protect the privacy and confidentiality of protected health information.

74.     In the breach of these duties, Dr. Kassop and Dr. Berkowitz failed at all relevant times to exercise reasonable care in protecting the privacy and confidentiality of protected health information. Dr. Kassop and Dr. Berkowitz breached their duties in a number of ways, including but not limited to, failing to use ordinary care in accessing, without authorization or authority, Plaintiff's protected health information, and failing to use ordinary care by disclosing and disseminating Plaintiff's protected health information to MAJ Wollenburg.

75.     As a direct and proximate result of Dr. Kassop and Dr. Berkowitz's actions, Plaintiff has been damaged and will continue to suffer damages, including, but not limited to, mental distress, emotional trauma, fear of receiving medical treatment, embarrassment, humiliation, and weekly therapy sessions.

## **PRAYER**

Plaintiff prays judgment against Defendants for $5,000,000, plus allowable punitive

damages, attorney's fees, and costs.


## **JURY DEMAND**

Plaintiff Claire Colon hereby demands a jury trial on all issues so triable.


Dated: July 28, 2017

Jacob M. Lebowitz, Esq.
Posey Lebowitz PLLC
3221 M Street NW
Washington, D.C. 20007
202-524-0123 (Telephone)
202-810-9009 (Fax)
jlebowitz@poseylebowitz.com
*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 30, 2017, a copy of the foregoing was filed using the Court's ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Jacob M. Lebowitz, Esq.
Posey Lebowitz PLLC
3221 M Street NW
Washington, D.C. 20007
202-524-0123 (Telephone)
202-810-9009 (Fax)
jlebowitz@poseylebowitz.com
*Counsel for Plaintiff*