**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

CLAIRE COLON,

v.

UNITED STATES OF AMERICA, *et al*.,

Defendants.

Civil Action No. 1:17-cv-00775 (JFM)

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Carl Nichols (*Pro Hac Vice*)
Jessica Leinwand (*Pro Hac Vice*)
Matthew Robinson (*Pro Hac Vice*)
Brent Gurney
WILMER CUTLER PICKERING
HALE & DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
carl.nichols@wilmerhale.com
jessica.leinwand@wilmerhale.com
matthew.robinson@wilmerhale.com
brent.gurney@wilmerhale.com

Date: August 14, 2017

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................ 3

STANDARD OF REVIEW .................................................................................................. 5

ARGUMENT ........................................................................................................................ 6

    I.   The Intra-Military Immunity Doctrine Requires Dismissal Of CPT Colon's
        Claims Against Dr. Berkowitz .............................................................................. 6

    II.  Count IV Must Be Dismissed Because The Court May Not Authorize Plaintiff's
        Proposed *Bivens* Claims .................................................................................... 7

    III. CPT Colon's State-Law Claims In Counts V And VI Must Be Dismissed For
        Lack Of Jurisdiction Or Failure To State A Claim For Relief ............................. 11

        A.  CPT Colon Fails to State a Claim under the MCMRA and under
            Maryland Common Law Because the Federal Enclave Doctrine
            Precludes Application of State Law to Her Claims ................................. 11

        B.  Count V Must Be Dismissed for Lack of Jurisdiction under Principles of
            Intergovernmental Immunity and Conflict Preemption ........................... 13

        C.  Count V Fails to Adequately Allege that Dr. Berkowitz "Knowingly
            and Willfully" Accessed and Disclosed Plaintiff's Medical Records
            "in Bad Faith," as Required by the MCMRA .......................................... 16

        D.  Maryland Common Law Does Not Provide CPT Colon with a
            Negligence Claim .................................................................................... 16

    IV. The FTCA's Judgment Bar Will Foreclose CPT Colon's Claims Against
        Dr. Berkowitz ...................................................................................................... 19

CONCLUSION .................................................................................................................... 20

Defendant Dr. Steven Berkowitz ("Dr. Berkowitz") respectfully moves this Court to dismiss Plaintiff Captain ("CPT") Claire Colon's Amended Complaint (the "Complaint"), ECF No. 19, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  In support of this motion, Dr. Berkowitz states as follows:

## INTRODUCTION

Dr. Berkowitz plays a minor, if not tangential role in the highly personal set of facts alleged in CPT Colon's Complaint.  According to the Complaint, CPT Colon and Major ("MAJ") Christian Wollenburg engaged in a years-long extramarital affair while on active duty as Army officers, in apparent violation of military law.  Am. Compl. ¶¶ 12, 21.  The affair resulted in a contentious paternity suit, a battle for custody over their minor child, and an internal Army investigation into CPT Colon and MAJ Wollenburg's conduct.  *Id.* ¶¶ 14-16.  Both CPT Colon and MAJ Wollenburg received psychological counseling and mental health treatment while on active duty.  *Id.* ¶¶ 10, 20.  Facing multiple court and disciplinary proceedings, MAJ Wollenburg allegedly prevailed on Dr. David Kassop, a close friend and Army doctor working at Walter Reed Army Medical center, to obtain CPT Colon's mental health records using the Armed Forces Health Longitudinal Technology Application ("AHLTA").  *Id.* ¶¶ 16-18.  MAJ Wollenburg allegedly used the records he obtained from Dr. Kassop in an unsuccessful attempt to win custody of his child and influence the Army's investigation.  *Id.* ¶¶19, 24-25.

CPT Colon alleges that Dr. Berkowitz, an Army psychologist, also provided MAJ Wollenburg with her protected health information.  *Id.* ¶ 20.  Importantly, however, CPT Colon offers no reason for Dr. Berkowitz to have knowingly compromised her privacy.  The Complaint alleges only that Dr. Berkowitz acted as MAJ Wollenburg's mental health provider at the time of the alleged violations.  *Id.*  Nonetheless, CPT Colon asserts that Dr. Berkowitz acted "with evil

motive and intent," and seeks to hold him personally liable—under the Constitution and Maryland statutory and common law—for the unauthorized access and disclosure of her personal health information to MAJ Wollenburg. *Id.* ¶ 57-75.

Setting aside the peripheral nature of the allegations against Dr. Berkowitz, CPT Colon's legal claims suffer from jurisdictional and substantive defects that require their dismissal. *First*, because CPT Colon's alleged injuries "stem from the relationship between [her] and [her] service in the military," the doctrine of intra-military immunity requires this Court to abstain from hearing CPT Colon's claims. *Cioca v. Rumsfeld*, 720 F.3d 505, 515 (4th Cir. 2013).

*Second,* decades of precedent foreclose CPT Colon's constitutional claim against Dr. Berkowitz. No court has recognized such a claim in analogous factual or legal circumstances and this Court should not do so now. Moreover, the Fourth Circuit has expressly held that the Ninth Amendment cannot form the basis of a constitutional damages claim against a federal officer. *See Wohlford v. USDA*, 842 F.2d 1293, 1988 WL 1293, *1 (4th Cir. March 17, 1988).

*Third*, the Constitution itself precludes CPT Colon's state-law claims. Because Dr. Berkowitz's alleged conduct took place on Fort Meade, a federal enclave subject to the exclusive jurisdiction of the United States, CPT Colon's claims under the Maryland Confidentiality of Medical Records Act ("MCMRA") and state common law lack any force. *See* U.S. Const., Art. 1, § 8, cl. 17.

*Fourth*, the Supremacy Clause renders the MCMRA invalid as applied to the Military Health System operated by the Department of Defense ("DoD"). The doctrine of intergovernmental immunity prohibits states from directly regulating the federal government, which is precisely what would occur if members of the military were required to comply with the requirements of Maryland's privacy law. *North Dakota v. United States*, 495 U.S. 423, 434

(1990) (plurality opinion) (holding that states cannot "regulate the Government directly").

Additionally, the MCMRA is preempted by the express provisions of the DoD regulation

governing the confidentiality of military health records.

*Fifth*, CPT Colon's statutory claim fails on its own terms.  The Complaint's conclusory

allegations that Dr. Berkowitz "knowingly and willfully" violated the MCMRA in bad faith are

not plausible.

*Sixth*, CPT Colon's common law negligence claim impermissibly depends upon state and

federal laws that either provide CPT Colon with a private cause of action or set forth an

alternative remedial scheme to address her purported injuries.  CPT Colon cannot be permitted to

circumvent available statutory avenues of relief by bringing a common law negligence claim

against Dr. Berkowitz.

*Finally*, if the Government's motion to dismiss is granted, the judgment bar of the

Federal Tort Claims Act, 28 U.S.C. § 2676, will foreclose CPT Colon's claims against Dr.

Berkowitz.  *See Unus v. Kane*, 565 F.3d 103, 122 (4th Cir. 2009).

For these reasons, discussed in more detail below, CPT Colon's claims against Dr.

Berkowitz should be dismissed.

## FACTUAL BACKGROUND

The allegations in the Complaint are summarized in the Memorandum in Support of the

Motion to Dismiss filed by the United States and DoD (the "Government"), *see* Mem. in

Support of Mot. to Dismiss First. Am. Compl. ("Gov't Mem."), at 4-6, ECF No. 26-1, and Dr.

Berkowitz does not repeat them here.  CPT Colon does make certain allegations regarding Dr.

Berkowitz, which we summarize below.

The Complaint alleges that while employed by the Department of the Army at Fort

Meade, Maryland, Dr. Berkowitz, a licensed psychologist, accessed CPT Colon's medical

3

records without authorization.  Am. Compl. ¶ 20.  CPT Colon asserts in the Complaint that Dr.

Berkowitz reviewed her and her daughter's medical records on three separate occasions—in

February, May, and November 2015.  *Id.* ¶¶ 20, 22.  CPT Colon claims that Dr. Berkowitz

"instructed" two employees at Fort Meade to "access, view, and print Plaintiff's medical

records for him" in February 2015, *id.* ¶ 20, and then personally "accessed Plaintiff's and Minor

Child's health records" in May and November, *id.* ¶ 22.  According to the Complaint, Dr.

Berkowitz was acting as MAJ Wollenburg's licensed health-care provider at the time of the

alleged access.  *Id.*  Although she offers no personal incentive for him to have done so, CPT

Colon alleges, "on information and belief," that Dr. Berkowitz accessed her medical records at

MAJ Wollenburg's request and subsequently disclosed her protected health information to MAJ

Wollenburg.  *Id.* ¶ 20.  Also "on information and belief," CPT Colon claims that MAJ

Wollenburg then disseminated her health information to his attorneys, CPT Colon's attorneys,

the D.C. Family Court, military officers, and "unknown others," to bolster his legal claims for

sole custody of their daughter.  *Id.* at ¶¶ 18-20, 24-25.  CPT Colon avers, however, that the D.C.

Family Court ultimately rejected MAJ Wollenburg's arguments regarding her mental health and

fitness and, on December 24, 2015, "awarded permanent sole legal custody" to CPT Colon and

her husband.  *Id.* at ¶ 26.  CPT Colon nonetheless claims to have suffered damages resulting

from the alleged access and disclosure of her protected health information, including mental

and emotional distress, embarrassment, fear of receiving medical treatment, humiliation and

weekly therapy sessions.  *Id.* ¶ 33.

CPT Colon maintains that Dr. Berkowitz was acting within the scope of his employment

at the time of his alleged access to and disclosure of her medical records.  *Id.* ¶ 28.  CPT Colon

further alleges that, as an employee of the Department of the Army, Dr. Berkowitz was

responsible for accessing the AHLTA health records system in compliance with relevant

"Department of Defense policies and procedures, the [MCMRA], the Privacy Act, and

HIPAA." *Id.* ¶ 31.

## STANDARD OF REVIEW

Rule 12(h)(3) mandates dismissal if "at any time" the Court determines that it lacks

subject matter jurisdiction.  And "because jurisdictional limits define the very foundation of

judicial authority, subject matter jurisdiction must, when questioned, be decided before any

other matter." *United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012).  Under Fed. R. Civ.

P. 12(b)(1), the plaintiff bears the burden of proving that subject matter jurisdiction exists.

*Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008).

Where there is more than one reason that a court does not have jurisdiction, "a federal court has

leeway to choose among threshold grounds for denying audience to a case on the merits."

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (internal

quotation marks omitted).

Fed. R. Civ. P. 12(b)(6), of course, requires dismissal of a claim when the complaint

"fail[s] to state a claim upon which relief can be granted."  A complaint must contain sufficient

facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

697 (2009) (internal quotations and citation omitted).  To survive a motion to dismiss, the

factual allegations of a complaint "must be enough to raise a right to relief above the

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiffs therefore

are required to "provide the grounds of entitlement to relief" with "more than labels and

conclusions," or "a formulaic recitation of the elements of a cause of action." *Id.*

**ARGUMENT**

I.    **THE INTRA-MILITARY IMMUNITY DOCTRINE REQUIRES DISMISSAL OF CPT COLON'S CLAIMS AGAINST DR. BERKOWITZ**

It is well established that the doctrine of intra-military immunity requires courts to abstain from hearing claims for damages that "arose out of activity incident to [the plaintiff's] service" in the military.  *Aikens v. Ingram*, 811 F.3d 643, 652 (4th Cir. 2016).  The doctrine bars Federal Tort Claims Act ("FTCA") claims against the government as well as federal and state-law damages claims against individuals.  *See Feres v. United States*, 340 U.S. 135, 146 (1950) (barring FTCA claims); *see also, e.g., United States v. Stanley*, 483 U.S. 669, 684 (1987) ("no *Bivens* remedy is available for injuries that 'arise out of or in the course of activity incident to service'"); *Aikens*, 811 F.3d at 650 (barring constitutional claims against state officials); *Trerice v. Summons*, 755 F.2d 1081, 1084 (4th Cir. 1985) (holding that the intra-military immunity doctrine "is a bar to any common law tort claims"); *Hass for Use and Benefit of the U.S. v. United States*, 518 F.2d 1138, 1141 (4th Cir. 1975) (barring negligence claims against civilian employees).  The doctrine also "serves to block [claims based upon] unauthorized activities or intentional torts."  *Blakey v. U.S.S. Iowa*, 991 F.2d 148, 152 (4th Cir. 1993) (internal citation omitted).

Here, because each of CPT Colon's claims against Dr. Berkowitz "stem from the relationship between [CPT] Colon and [her] service in the military," they satisfy the "incident to service" test and warrant dismissal.  *Id.* at 651 (*quoting Cioca*, 720 F.3d at 515).  In *Stewart v. United States*, the Court considered several factors to determine whether activity was "incident to service" including:  the service-member's military status, the location of the alleged injury, the military regulations governing the activity at issue, and whether that activity arose out of military service.  *See* 90 F.3d 102, 104-05 (4th Cir. 1996); but see *United States v. Johnson*, 481 U.S. 681, 686 (1987) ("[T]his Court has never suggested that the military status

6

of the alleged tortfeasor is crucial to the application of the doctrine.").

It cannot seriously be denied that CPT Colon's purported injuries arose out of activities "incident to" her military service. *Stewart*, 90 F.3d at 104-05. CPT Colon was an active duty service-member when her medical records were created. The existence of her medical records in AHLTA—the Army's electronic medical records system, which is governed by Department of Defense instructions, policies, and procedures, *see* Am. Compl. ¶ 38-9—resulted from her treatment by military health care providers at military medical facilities. As the Government summarized in its motion to dismiss, "it was [Plaintiff's] treatment by military health care providers at military medical installations … and the subsequent disclosure of the records from her treatment (again by uniformed members and civilian employees of the Army) contained in AHLTA … that led to her injuries." Gov't Mem. at 22. None of CPT Colon's alleged injuries in this case would have occurred but for her military service. Because CPT Colon's claims are barred by intra-military immunity, a "threshold question" that forecloses further consideration of the legal sufficiency of CPT Colon's claims, *Aikens*, 811 F.3d at 647 (quoting *Cioca*, 720 F.3d at 508 n.4), dismissal of all claims against Dr. Berkowitz is required.

## II.    COUNT IV MUST BE DISMISSED BECAUSE THE COURT MAY NOT AUTHORIZE PLAINTIFF'S PROPOSED *BIVENS* CLAIMS

Even if the Court had jurisdiction over CPT Colon's claims against Dr. Berkowitz, CPT Colon's *Bivens* claim (Count IV) must be dismissed because no Court has extended a *Bivens* remedy to the factual and legal circumstances at issue in this case. The Fourth Circuit has held that the Ninth Amendment cannot be the basis for a cause of action under *Bivens* because it "creates no constitutional rights." *Wohlford*, 1988 WL 1293, *1 (citing *Strandberg v. City of*

*Helena*, 791 F.2d 744, 748 (9th Cir. 1986)).[1]  To the extent CPT Colon maintains that Dr.

Berkowitz also violated her Fifth and Fourteenth Amendment rights, Am. Compl. ¶ 58, she has

pleaded no facts in support of those claims.

In any event, and as the Supreme Court recently affirmed, "caution must be exercised

with respect to damages actions implied to enforce the Constitution itself." *Ziglar v. Abbasi*,

137 S. Ct. 1843, 1848 (2017) ("Expanding the *Bivens* remedy is now considered a 'disfavored'

judicial activity." (internal quotation omitted)).  Accordingly, since *Bivens*, the Supreme Court

has "extended its holding only twice," *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 70

(2001), and has only done so with respect to circumstances not implicated here, *see Davis v.*

*Passman*, 442 U.S. 228 (1979) (employment discrimination in violation of Fifth Amendment);

*Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment violation by prison officials).  And

in the thirty-seven years since *Bivens* was last expanded, the Supreme Court has "consistently

refused to extend *Bivens* liability to *any* new context or new category of defendants."  *Malesko*,

534 U.S. at 68 (emphasis added) (Eighth Amendment violation by prison officials working for

federal contractor).

In determining whether a particular case presents a new "context," the Supreme Court

reaffirmed in *Abbasi* that courts must ask whether "the case is different in a meaningful way

from previous *Bivens* cases decided by th[e] [Supreme] Court."  *Abbasi*, 137 S. Ct. at 1849.  To

illustrate by example, "[a] case might differ … because of the rank of the officers involved; the

---

[1] The Court's view in *Wohlford* is consistent with precedent in other circuits.  *See, e.g.*,
*Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 9 (1st Cir. 2007) (the Ninth Amendment does
not create substantive rights); *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1125
(9th Cir. 1996) ("[T]he Ninth Amendment has not been interpreted as independently securing
any constitutional rights for purposes of making out a constitutional violation.") (internal
quotation omitted).

constitutional right at issue; the [nature] of the official action; the extent of judicial guidance as to how an officer should respond … or the … legal mandate under which the officer was operating ….”  *Id.* at 1860.  No court, however, has extended *Bivens* to the context at issue here—to provide damages for the alleged access, without authorization, of a service-member's medical records by a DoD employee; nor has any court inferred a cause of action for damages under the Fifth or Fourteenth Amendments to remedy alleged injuries in a factual and legal context analogous to this case.

It is also well settled that courts should not extend *Bivens* to new contexts where “Congress has provided what it considers adequate remedial mechanisms for constitutional violations,” or if there are “special factors counseling hesitation” before creating a new damages remedy.  *Zimbelman v. Savage*, 228 F.3d 367, 370 (4th Cir. 2000) (quoting *Schweicker v. Chilicky*, 487 U.S. 412, 423 (1988)).  The judicial creation of a *Bivens* remedy here would be inappropriate for both reasons.

*First*, that the Privacy Act offers “an alternative, remedial structure” to address CPT Colon's alleged harm forecloses her *Bivens* claim.  *Abbasi*, 137 S. Ct. at 1858; *see also Chesser v. Chesser*, 600 F. App'x 900, 901 (2015) (*per curiam*) (affirming denial of Rule 60(b) motion on the ground that the “Privacy Act is a ‘comprehensive legislative scheme’ that precludes additional *Bivens* remedies”) (quoting *Downie v City of Middleburg Heights*, 301 F.3d 688, 698 (6th Cir. 2002)).  The Privacy Act “gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements.”  *Doe v. Chao*, 540 U.S. 614, 618 (2004).  The statute imposes civil liability for the disclosure of any record from an agency's system of records absent individual consent or the application of an enumerated exemption.  5 U.S.C.

9

§ 552a(b).  While the Privacy Act does not authorize a damages remedy against individuals like Dr. Berkowitz, it does create such a cause of action against the government (one that CPT Colon is pursuing in this lawsuit), and in light of the comprehensive nature of the statutory scheme, Congress's decision not to permit damages against individuals precludes the judicial creation of such a remedy.[2]  *See Chilicky*, 487 U.S. at 423; *see also, e.g.*, *Bloch v. Exec. Office of the President*, 164 F. Supp. 3d 841, 860, n.26 (E.D. Va. 2016); *Lim v. United States*, No. 10–2574, 2011 WL 2650889, at *8 (D. Md. July 5, 2011); *Williams v. Dept. of Veterans Affairs*, 879 F. Supp. 578, 581 n.5 (E.D. Va. 1995).[3]

*Second*, special factors counsel against implying a cause of action against Dr. Berkowitz—namely that, as discussed *supra* Part I, CPT Colon's alleged injuries "arise out of or … in the course of activity incident to [military] service."  *Stanley*, 483 U.S. at 684 (refusing to extend *Bivens* to service-member's claim for damages resulting from secret administration of LSD to him as part of Army experiment).  The Fourth Circuit has made clear that "*Bivens* suits are never permitted for constitutional violations arising from military service, no matter how severe the injury or how egregious the rights infringement.'"  *Cioca*, 720 F.3d at 512 (internal quotation omitted).  Here, CPT Colon's purported injuries stem from the mental health

---

[2] CPT Colon has brought claims under the Privacy Act against the United States and the Department of Defense.  Am. Compl. ¶¶ 44-55.

[3] The D.C. Circuit, which frequently adjudicates claims against the government and federal officials, has held that the Privacy Act precludes creation of a *Bivens* remedy for an individual's constitutional claims.  *See, e.g.*, *See Jacobs v. BOP*, No. 12-5129, 2012 WL 6603085, at *1 (D.C. Cir. Dec. 17, 2012) (*per curiam*) (holding that "[t]he district court []correctly concluded appellant may not pursue a *Bivens* remedy for his claims related to the Privacy Act"); *Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008) (refusing to extend *Bivens* where the Privacy Act provided available remedy, even though the Act does not necessarily provide plaintiffs with full relief); *Griffin v. Ashcroft*, No. 02-5399, 2003 WL 22097940, at *2 (D.C. Cir. Sept. 3, 2003) (*per curiam*) (affirming the dismissal of a *Bivens* claim "because such claims are encompassed within the Privacy Act's comprehensive remedial scheme").

treatment she received as an active Army service-member and the maintenance of her medical

records in AHLTA.  CPT Colon's *Bivens* claim fails as a matter of law.

## III.   CPT COLON'S STATE-LAW CLAIMS IN COUNTS V AND VI MUST BE DISMISSED FOR LACK OF JURISDICTION OR FAILURE TO STATE A CLAIM FOR RELIEF

### A.    *CPT Colon Fails to State a Claim under the MCMRA and under Maryland Common Law Because the Federal Enclave Doctrine Precludes Application of State Law to Her Claims*

Dr. Berkowitz's alleged state-law violations occurred at Kimbrough Ambulatory

Medical Center on Fort Meade, Maryland, where Dr. Berkowitz is employed.  Am. Compl.

¶ 20.  Specifically, CPT Colon asserts that Dr. Berkowitz "instructed" two employees at Fort

Meade to "access, view, and print Plaintiff's medical records for him."  *Id.*  Therefore, as

pleaded by CPT Colon, the events giving rise to CPT Colon's claims against Dr. Berkowitz

occurred on Fort Meade, a "federal enclave" subject to the exclusive jurisdiction of the federal

government.  U.S. Const., Art. 1, § 8, cl. 17 (providing Congress with authority to exercise

jurisdiction over land purchased from states for the erection of a fort); *see also Balt. Gas and

Elec. Co. v. U.S.*, 133 F. Supp. 2d 721, 741, 744 (D. Md. 2001) (establishing exclusive federal

jurisdiction over land acquired through the Federal Enclave Doctrine by the United States).

The Constitution's Federal Enclave Clause establishes Congress's authority to "exercise

exclusive legislation ... over all places purchased by the consent of the Legislature of the State

in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other

needful buildings."  The Fourth Circuit has held that, where land is ceded to the United States

pursuant to the Federal Enclave Clause, "only the state laws in effect at the time of the transfer

of jurisdiction continue in effect" and subsequent statutes "are not part of the laws of the ceded

area unless Congress takes action to keep them current."  *Stokes v. Adair*, 265 F.2d 662, 665

(4th Cir. 1959); *see also Upstate Citizens for Equal., Inc. v United States*, 841 F.3d 556, 571

(2d Cir. 2016) ("After exclusive jurisdiction is assumed, newly-enacted state laws have no effect on the federal enclave."); *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1235 (10th Cir. 2012) ("state law that is adopted after the creation of the enclave generally does not apply on the enclave").

The 1906 Maryland statute ceding Fort Meade to the United States mirrors the text of the Federal Enclave Clause. *See Balt. Gas and Elec. Co.*, 133 F. Supp. 2d at 741 (comparing the Federal Enclave Clause with the authority to cede Fort Meade to the federal government in 1906). In addition, the MCMRA was enacted in 1990, decades after Fort Meade became a federal enclave, 1990 Md. Laws, Ch. 480, and no federal law or regulation permits the application of the MCMRA to Fort Meade. Because the MCMRA is "not a part of the body of laws" that govern activity on Fort Meade, it cannot provide a cause of action arising from conduct occurring there. *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 100 (1940) ("future statutes of the state are not a part of the body of laws in the ceded area").

CPT Colon's common law negligence claim fails for the same reasons. To date, Maryland courts have not recognized a cause of action for "negligent access and disclosure of protected health information," and such a novel cause of action certainly was not available when Maryland ceded Fort Meade to the federal government. Am. Compl. Count VI. Moreover, the common law duties Dr. Berkowitz is alleged to have violated all derive from statutes and regulations passed decades after Fort Meade's cession. The Privacy Act was passed in 1974, *see* Pub. L. No. 93-579; the MCMRA in 1990, *see* 1990 Md. Laws, Ch. 480; HIPAA in 1996, *see* Pub. L. No. 104-191; and DoD Directive 6025.18-R in 2003, *see* 68 Fed. Reg. 17,357 (Apr. 9, 2003). Indeed, Maryland only recognized the tort of invasion of privacy, perhaps the closest analog to CPT Colon's negligence claim, in 1962—roughly fifty years *after*

Fort Meade became a federal enclave.  *See Carr v. Watkins*, 177 A.2d 841 (Md. 1962).

      B.      *Count V Must Be Dismissed for Lack of Jurisdiction under Principles of Intergovernmental Immunity and Conflict Preemption*

   Additionally, Count V of the Complaint should be dismissed for lack of jurisdiction because the MCMRA, as applied to CPT Colon's claims, violates the intergovernmental immunity doctrine and is preempted by federal law.  The intergovernmental immunity doctrine, which is rooted in the Supremacy Clause, commands that "the activities of the federal government [be] free from regulation by any state," *N.C. ex rel. Cooper v. Tenn. Valley Auth.*, 515 F.3d 344, 350 (4th Cir. 2008) (internal quotation omitted).  Courts have interpreted the intergovernmental immunity doctrine to preclude application of state laws that seek to "regulate the government directly," by, for example, regulating federal operations or property.  *North Dakota*, 495 U.S. at 434; *Hancock v. Train*, 426 U.S. 167, 170-80 (1976).  State regulations run afoul of the intergovernmental immunity doctrine where they "constrain[] the conduct of federal agents and employees," *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) (internal citation omitted), or seek to regulate "federally owned facilit[ies] performing … federal function[s]," *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988).

   The doctrine of conflict preemption is also rooted in the Supremacy Clause, which vests in the federal government plenary authority to regulate the armed forces, free of interference by the states, and which preempts state laws that conflict with federal law.  *See* U.S. Const., art. I, § 8, cl. 11-14; art. II. § 2, cl. 1; art. VI, cl. 2; *Lebron v. Rumsfeld*, 670 F.3d 540, 548-49 (4th Cir. 2012) (holding that the federal government controls the "rights, duties, and responsibilities in the framework of the military establishment, including regulations, procedures, and remedies") (quoting *Chappell v. Wallace*, 462 U.S. 296, 301 (1983)); *see also Kurtz v. Moffitt*, 115 U.S. 487, 503 (1885) ("army regulations derive their force from the power of the president as

commander in chief, and are binding upon all within the sphere of his legal and constitutional authority.").

Here, several federal statutes, regulations, and directives govern the access and disclosure of military health records and are relevant to CPT Colon's claims.  These federal provisions include the Privacy Act, HIPAA, and DoD Directive 6025.18-R.  DoD Directive 6025.18-R specifically provides for the "use and disclosure[]" of private health information "for specialized government functions," *id.* at C7.11, such as "activities deemed necessary by … military command authorities" and "[n]ational security and intelligence activities."  45 C.F.R. § 164.512(k).  The Directive makes clear that, as a general matter, "[s]tate laws pertaining to healthcare *are not applicable to healthcare programs and activities of the Department of Defense*."  6025.18-R-C.2.4.2 ("Preemption of State Law") (emphasis added); *cf. Woodson v. Allstate Ins. Co.*, 855 F.3d 628, 637 (4th Cir. 2017) (contractual preemption clause provided by federal regulation preempts state law).

Plaintiff's claims under the MCMRA improperly seek to impose additional and different requirements on the federal government, and thus displace this comprehensive federal scheme. *See, e.g.*, *United States v. Virginia*, 139 F.3d 984, 989 (4th Cir. 1998) (invalidating state "regulatory scheme," as applied to the federal government because state law operated to "second guess" federal decision making).  The MCMRA establishes a general rule of confidentiality for health care information.  The statute requires that health care providers keep medical records confidential, and permits disclosure only under specific circumstances or "as otherwise provided by law."  Md. Code Health-Gen. § 4-302(a)(2).[4]  The MCMRA also

---

[4] The state of Maryland recently enacted legislation providing that the MCMRA "is to be interpreted in a way that is consistent with any federal regulations adopted under the federal Health Insurance Portability and Accountability Act, [and] federal policy guidance on the federal

provides for an individual, private right of action, *see id.* § 4-309(f), although it excepts from

liability disclosures that are made by medical providers in good faith.  *See id.* § 4-308.

By contrast, DoD Directive 6025.18-R makes clear that "[t]here is no private cause of

action under [the Directive]" and that nothing in the rule confers "a right to initiate a legal

action in court for any alleged violations."  C.2.7.1 ("No Private Cause of Action").  Sanctions

for noncompliance with the Directive are governed by other federal laws, including the

Uniform Code of Military Justice and Chapter 75 of Title 5 of the U.S. Code, which concerns

adverse employment actions for civilian employees.  *Id.* C.14.5.1.  The "right to sue" provision

of the MCMRA thus "is plainly contrary" to the detailed scheme established by DoD and is

preempted.  *Chi. and N.W. Trans. Co. v. Kalo Brick & Tile Co.* 450 U.S. 311, 331 (1981); *see*

*also Sara Lee Corp.*, 508 F.3d at 194 (preempting state law that would allow plaintiffs to

"circumvent" federal law's "exclusive remedies").  And DoD's Directive leaves no room for

ambiguity on the question of preemption:  the rule states that, "[i]n any case in which there is a

conflict between this Regulation and State law, this Regulation shall apply …."  6025.18-R-

C2.4.2.  *See Wis. Dep't of Indus., Labor, and Human Relations v. Gould Inc.* 475 U.S. 282, 286

(1986) ("[C]onflict is imminent whenever two separate remedies are brought to bear on the

same activity."); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) ("[t]he policy choices

reflected in the inclusion of certain remedies and the exclusion of others under the federal

scheme would be completely undermined if [parties] were free to obtain remedies under state

law that [federal law] rejected".); *see also Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th

Cir. 2007) ("the provision of exclusive remedies for enforcing rights expressly guaranteed by"

---

Health Insurance Portability and Accountability Act."  2017 Maryland Laws Ch. 700 (H.B.
1468).  The legislation, which takes effect on Oct. 1, 2017, indicates that the MCMRA should be
construed not to conflict with DoD Directive 6025.18-R.  *Id.*

federal law is a "special feature[] warranting preemption") (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 87 (1990)).

C.    *Count V Fails to Adequately Allege that Dr. Berkowitz "Knowingly and Willfully" Accessed and Disclosed Plaintiff's Medical Records "in Bad Faith," as Required by the MCMRA*

CPT Colon's allegations in Count V that Dr. Berkowitz disclosed her health records "knowingly," "willfully," and in "bad faith," are not plausible.  Am. Compl. ¶ 68.  CPT Colon alleges that Dr. Berkowitz was acting as MAJ Wollenburg's mental health provider at the time of his access and disclosure of CPT Colon's protected health information.  Am. Compl. ¶ 20. On the sole basis of this professional connection, CPT Colon alleges "on information and belief" that Dr. Berkowitz "agreed to access Plaintiff and Minor Child's records" and subsequently disclosed the records to MAJ Wollenburg "to assist [him] in his pending custody case and adultery investigation." *Id.*

The Complaint alleges no facts to explain Dr. Berkowitz's motivation for supporting MAJ Wollenburg in either proceeding and therefore does not raise CPT Colon's "right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (allegations must "allow[] the court to draw the reasonable inference that defendant is liable for the misconduct alleged").  Absent those allegations, CPT Colon's claim that Dr. Berkowitz knowingly accessed and disclosed CPT Colon's health information in bad faith is no more than an "unwarranted inference[] [and] unreasonable conclusion[]." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (internal quotations omitted)).

D.    *Maryland Common Law Does Not Provide CPT Colon with a Negligence Claim*

CPT Colon amended her Complaint to allege in Count VI the "negligent access and disclosure of protected health information"—a novel tort under Maryland law.  In making this claim, CPT Colon asserts that Dr. Berkowitz was "responsible for accessing records in AHLTA

16

in compliance with Department of Defense policies and procedures, the Maryland

Confidentiality of Medical records Act, the Privacy Act, and HIPAA …." Am. Compl. ¶ 73.

Her common law negligence claim specifically alleges the "breach of these [statutory] duties."

*Id.* ¶ 74.

      Courts in Maryland have made clear that "absent clear legislative intent to the contrary,

statutorily created remedies are deemed to be exclusive." *State v. Philip Morris Inc.*, No.

96122017, 1997 WL 540913, at \*4 (Md. Cir. Ct. May 21, 1997) (collecting cases). These

holdings are based on the principle that "[a] statute that directs a thing to be done in a particular

manner ordinarily implies that it shall not be done otherwise." *Office and Prof'l Emps. Int'l*

*Union, Local 2 (AFL-CIO) v. Mass Transit Admin.*, 453 A.2d 1191, 1195 (Md. 1982) (quoting

*Roselle Park Trust Co. v. Ward Baking Corp.*, 9 A.2d 228, 231 (Md. 1939)). The statutes and

regulations listed in Count VI each provide specific remedies for the access and disclosure of

private health information without authorization. For example, the Privacy Act establishes a

framework governing the use, maintenance, and disclosure of federal records, and provides for

damages only for intentional or willful conduct. *See* 5 U.S.C. § 552a(g). DoD Directive

6025.18-R, which implements HIPAA, provides for overlapping civil and criminal penalties for

the unauthorized disclosure of protected health information, and requires entities to mitigate the

harm caused by any violations of DoD's rule. *See* 6025.18-R C.2.5, C.14.4-6. Finally, the

MCMRA permits civil liability (limited to actual damages) for "knowing" violations of the act

and criminal penalties for "knowing and willful" violations. Md. Code. Health-Gen § 4-309.

To allow CPT Colon's common law claim to proceed would disrupt the specific avenues of

relief established under each of these provisions. For example, by advancing her negligence

claim, CPT Colon would circumvent the Privacy Act's damages and pleading limitations,[5] the

bar on private suits set forth in DoD Directive 6025.18-R,[6] and the MCMRA's knowledge

requirement and damages limitation.[7]

    As discussed above, CPT Colon's claim in Count VI has not yet been recognized in

Maryland. Nonetheless, the remedies set forth under the Privacy Act, HIPAA, DoD

regulations, and the MCMRA preclude CPT Colon's common law claim regardless of whether

it had been established before the applicable federal and state laws took effect. *See Phillip*

*Morris*, 1997 WL 540913, at *4 ("The rule … applies even in instances where there may be an

alternative cause of action recognized under general or common law in Maryland …."); *see also*

---

[5] The Privacy Act limits recovery to "actual damages," 5 U.S.C. § 552a(g)(4)(A), which the Supreme Court has construed to mean "actual pecuniary loss, which must be specially pleaded and proved." *F.A.A. v. Cooper*, 566 U.S. 284, 295 (2012).

[6] *See* 6025.18-R C2.7 (prohibiting private causes of action). State courts are split on whether HIPAA, which does not provide a private right of action, can form the basis of a common law negligence claim under certain circumstances. *Compare, e.g.*, *Sheldon v. Kettering Health Network*, 40 N.E.3d 661, 672 (Ohio Ct. App. 2015) ("utilization of HIPAA as an ordinary negligence 'standard of care' is tantamount to authorizing a prohibited private right of action for violation of HIPAA itself") *with Byrne v. Avery Ctr. For Obstetrics and Gynecology, P.C.*, 102 A.3d 32, 49 (Conn. 2014) ("HIPAA and its implementing regulations may be utilized to inform the standard of care applicable to such claims arising from allegations of negligence in the disclosure of patients' medical records pursuant to a subpoena"). In any event, DoD Directive 6025.18-R, which implements HIPAA as to the Defense Department, expressly prohibits a private cause of action. *See* C2.7. And no court has held that DoD Directive 6025.18-R can form the basis of a common law negligence claim.

[7] Whereas a negligence claim generally permits recovery of both compensatory and punitive damages, *see, e.g, Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 653 (Md. 1992), the MCMRA restricts recovery to "actual damages," Md. Code. Health-Gen. § 4-309(f). Similarly, the MCMRA only permits liability for "knowing[]" violations rather than simple negligence. *Id.* § 4-309(f); *see also Davis v. Johns Hopkins Hosp.*, 622 A.2d 128, 139 n.7 (Md. 1993) (holding that, under § 4-309(a) of the MCMRA, the term "knowingly refuses to disclose" "proscribes intentional, as opposed to negligent ... conduct"); *Bond v. Messerman*, 873 A.2d 417, 432 n.6 (Md. App. 2005) (suggesting that *Davis's* construction applies to § 4-309(f)). CPT Colon's negligence claim flouts the MCMRA's intent requirement. *See Phillip Morris*, 1997 WL 540913, at *4.

*Caspary v. La. Land & Expl. Co.*, 707 F.2d 785, 791 (4th Cir. 1983) ("a statute fully occupying the field covered by the common law, as certainly was here the case, replaces and extinguishes the common law"); *In re Jason Daniel M.-A.*, 2016 WL 769860, at *3 (Md. Ct. Spec. App. Feb. 29, 2016) ("where the general assembly … has seen fit to broadly regulate a particular field … , there is a presumption that preexisting common law principles in the field are superseded to the same extent"); *Robinson v. State*, 728 A.2d 698, 702 (Md. 1999) ("Where a statute and the common law are in conflict, or where a statute deals with an entire subject-matter … the statute is generally construed as abrogating the common law as to that subject.").[8]  Because there are federal and state statutes that provide redress for CPT Colon's purported injuries, she is not entitled to bring a common law negligence claim.

## IV.    The FTCA's Judgment Bar Will Foreclose CPT Colon's Claims Against Dr. Berkowitz

The Government argues that CPT Colon's failure "to exhaust her administrative remedies concerning her allegations against Dr. Berkowitz" requires dismissal of all claims against the Government "based on Dr. Berkowitz's conduct."  Gov't Mem. at 2.  Should the Government prevail, the judgement bar of the FTCA also will require dismissal of CPT Colon's claims against Dr. Berkowitz, with prejudice.

According to 28 U.S.C. § 2676, a judgment in an action under the FTCA "shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim."  A

---

[8] Maryland courts have specifically held that the MCMRA provides the exclusive judicial remedy for the violations it seeks to address.  *See Md. State Bd. of Physicians v. Heist*, 11 A.3d 786, 799 (Md. 2011).  In *Heist*, the Maryland Court of Appeals held that the MCMRA was the only means available to prevent the compelled disclosure of protected health records, and that a health care provider "was not entitled to" employ alternative remedies to refuse compliance with a Rule 45 subpoena.  *Id.*

dismissal on exhaustion grounds constitutes a "judgment" as defined under the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 54(a) (defining as a judgment "any order from which an appeal lies"); *see also Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1067 (4th Cir. 1999) (holding an order of dismissal based on failure to exhaust contractual remedies was final and appealable) (internal quotation omitted)); *see also Kaufman v. Baynard*, No. 1:10cv0071, 2012 WL 844480, at *9-10 (S.D. W.Va. Feb. 3, 2012) (collecting cases).

Additionally, CPT Colon's claims against the Government "arose out of the same 'subject matter'"—the allegedly unauthorized access of her Army medical records—as her claims against Dr. Berkowitz, "the employee of the government whose act or omission gave rise to the claim."  *Unus v. Kane*, 565 F.3d 103, 122 (4th Cir. 2009) (quoting 28 U.S.C. § 2676). As the Fourth Circuit in *Unus* made clear, where a plaintiff chooses to bring tort claims against the Government and individual officers, she "risk[s] having a judgment on the FTCA claims operate to bar [her individual liability] theories."  *Id.* at 122.  The Government's success on its motion to dismiss also would foreclose CPT Colon's damages claims against Dr. Berkowitz.

## CONCLUSION

For the foregoing reasons, Dr. Berkowitz's Motion to Dismiss should be granted, and the Complaint should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

Date:   August 14, 2017

/s/ Jessica Leinwand
Jessica Leinwand (*Pro Hac Vice*)
Carl Nichols (*Pro Hac Vice*)
Matthew Robinson (*Pro Hac Vice*)
Brent Gurney
WILMER CUTLER PICKERING
HALE & DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
carl.nichols@wilmerhale.com
jessica.leinwand@wilmerhale.com
matthew.robinson@wilmerhale.com
brent.gurney@wilmerhale.com