FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 MAR 14 A 10: 19

CLERKS OFFICE
AT GREENBELT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

|  |  |  |
|---|---|---|

**CLAIRE COLON,**

    **Plaintiff,**

v.

**UNITED STATES OF AMERICA, *et al.*,**

    **Defendants.**

**Case No.: GJH-17-775**

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

Plaintiff Claire Colon files suit against Defendants the United States of America ("United States"), the Department of Defense ("DOD"), Dr. David Kassop, and Dr. Steven Berkowitz, seeking $5,000,000 plus punitive damages, attorney's fees, and costs for the violation of various federal and state laws relating to the access and distribution of her confidential medical records. Specifically, Colon alleges the United States violated the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*; DOD violated the Privacy Act, 5 U.S.C. § 552a; and Kassop and Berkowitz violated the Fifth, Ninth, and Fourteenth Amendments, the Maryland Confidentiality of Medical Records Act ("MCMRA"), Md. Code Ann. Health Gen. § 4-301 *et. seq.*, and committed a novel tort under Maryland law—the negligent access and disclosure of protected health information. Now pending are Defendants' motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The parties have fully briefed the issues, and no oral argument is necessary. *See* Local Rules 105.6 (D. Md. 2016). For the reasons set forth below, the motions to dismiss of the United States, Kassop, and Berkowitz are granted, and DOD's motion to dismiss is denied.

## I.     BACKGROUND[1]

Claire Colon is a citizen and resident of Hawaii who joined the Army in May 2004. ECF No. 19 ¶¶ 1, 9. Kassop is a citizen and resident of North Carolina employed as a cardiologist by the Department of the Army at Fort Bragg, North Carolina and licensed to practice medicine in Maryland. *Id.* ¶ 2. Berkowitz is a citizen and resident of Maryland, employed as a psychologist by the Department of the Army at Fort Meade, Maryland and licensed to practice medicine in Maryland. *Id.* ¶ 3.

This dispute arises out of Kassop and Berkowitz's alleged access and distribution of Colon's protected health records. While deployed in Iraq in the mid-2000s, Colon was assaulted by three fellow soldiers. *Id.* ¶ 10. That trauma was compounded when Colon experienced post-partum depression following the pregnancies of her two oldest children in the late-2000s. *Id.* Eventually Colon sought professional help through the Army to address these mental health issues. *Id.* Ultimately, a medical diagnosis led Colon to medically retire from the Army as a Captain with an Honorable Discharge on April 22, 2014. *Id.* ¶ 11.

Colon engaged in an extramarital affair with Major Christian Wollenburg beginning in June 2009. *Id.* ¶ 12. As a result of the extramarital affair, Colon and Wollenburg had a daughter, who was born in Bethesda, Maryland on October 2, 2010. *Id.* ¶ 12. After their daughter was born, Colon and Wollenburg engaged in protracted litigation in the Domestic Relations Branch of the Family Court of the District of Columbia ("the Family Court"). *Id.* ¶ 14. The Family Court resolved a paternity suit in favor of Wollenburg on September 12, 2013. *Id.* Colon subsequently filed a custody complaint, which took more than two years to resolve. *Id.*

Colon alleges that in the midst of this custody dispute, in November 2013, Wollenburg contacted his close friend and former college roommate Kassop and asked Kassop to obtain

[1] The facts are taken from the Complaint and assumed to be true.

2

Colon's confidential health information for him. *Id.* ¶ 16. She alleges that Wollenburg did so hoping that he might be able to use her mental health issues to win custody of their child. *Id.* At the time, Kassop was stationed at the Walter Reed Army Medical Center in Bethesda, Maryland. *Id.* Colon alleges that Kassop complied with this request, accessing the Armed Forces Health Longitudinal Technology Application ("AHLTA")—the electronic medical record system used by DOD and the Army—on November 22, 2013 at shortly after 6 p.m. *Id.* at ¶ 17. Colon alleges that Kassop accessed this information for at least forty-two minutes, during which time he was able to see all of Colon's private health information, including clinical notes, medications, laboratory results, and radiology records. *Id.* Colon was never a patient of Kassop's and never granted him consent to access her records. *Id.* Colon alleges that after accessing her personal medical information, Kassop then shared that information with Wollenburg. *Id.* ¶ 18. She alleges that Wollenburg in turn shared that information with Lieutenant Colonel Ralph Taylor, *id.* ¶ 19, who the Army had tasked with investigating Wollenburg's conduct to determine whether he violated the Uniform Code of Military Justice ("UCMJ") by engaging in an adulterous relationship with Colon. *Id.* ¶ 15.

Colon further alleges that in February 2015, Wollenburg contacted his own psychologist, Berkowitz, and asked Berkowitz to obtain Colon's medical information as well. *Id.* ¶ 20. Colon alleges that Berkowitz instructed employees Kiaya Jackson and Jessica Hall to access, view, and print Colon's medical records for him. *Id.* As a result, she alleges that Berkowitz obtained her personal medical records and then shared those records with Wollenburg. *Id.*

On February 24, 2015, Taylor issued an investigative report into Wollenburg's conduct, finding that the conduct amounted to adultery based on a civilian and moral standard but did not amount to adultery according to the UCMJ standard because the relationship did not prejudice

the good order and discipline of the military. *Id.* ¶ 21. In that report, Taylor detailed Colon's personal mental health history. *Id.*

Colon alleges that in May 2015—as well as in November 2015—Berkowitz again accessed Colon's health records. *Id.* ¶ 22. She alleges that on those dates he also accessed her daughter's health records. *Id.*

In June and July 2015, the Family Court held custody hearings in the dispute between Colon and Wollenburg. *Id.* at ¶ 25. Colon alleges that Wollenburg distributed her private health records to each of their attorneys and the court in anticipation of those hearings. *Id.* ¶ 24. Wollenburg also included Kassop and Taylor as fact witnesses in those hearings, on the grounds that Kassop was qualified to testify as a physician and Taylor was qualified to testify as to Colon's mental health. *Id.* ¶ 23. During the hearings, Wollenburg attempted to use Colon's history of mental health issues in order to gain sole custody of their daughter. *Id.* ¶ 25. Colon alleges that the basis for Wollenburg's knowledge of these issues was the information he received from Kassop and Berkowitz. *Id.* Ultimately, Colon and her husband were awarded permanent sole legal custody of the child on December 24, 2015. *Id.* ¶ 26. The Family Court acknowledged Wollenburg's arguments regarding Colon's mental health issues but expressed no concern about her ability to be a good mother. *Id.*

In August 2015, Colon asked the Army to investigate whether Wollenburg had accessed her protected health information. *Id.* ¶ 27. On November 16, 2015, the Army informed Colon that it had discovered breaches of Colon's and her child's protected medical records, including access by Kassop and Berkowitz. *Id.*

On March 21, 2017, Colon filed an initial complaint in this Court against the United States, Secretary of Defense James Mattis, Kassop, and Berkowitz. *See* ECF No. 1. On July 14,

2017 and July 20, 2017, respectively, Defendants filed motions to dismiss the initial complaint. *See* ECF Nos. 12, 16. On July 30, 2017, Colon filed an Amended Complaint, which substituted DOD for Mattis as a defendant and made a few additional changes to the initial Complaint. *See* ECF No. 19. The filing of the Amended Complaint rendered those motions moot.

In Counts I and II, Colon sues the United States, seeking to hold the federal government liable under the FTCA for the acts and omissions of federal employees Kassop and Berkowitz. In Count III, she sues DOD for violating the Privacy Act. In Count IV, she sues Kassop and Berkowitz for violating the Fifth, Ninth, and Fourteenth Amendments, and asks the Court to extend the *Bivens* remedy to cover the facts of this case. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). In Count V, she sues Kassop and Berkowitz for violating the MCMRA. In Count VI, she sues Kassop and Berkowitz for the negligent access and disclosure of protected health information, a novel tort that has not yet been recognized in Maryland.

On August 11, 2017, the United States and DOD filed a motion to dismiss Colon's complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). *See* ECF No. 26. On August 14, 2017, Kassop and Berkowitz filed motions to dismiss on the same grounds. *See* ECF Nos. 27, 28. The Defendants' motions to dismiss are now pending.

## II.     STANDARD OF REVIEW

### A.  Motion to Dismiss Pursuant to Rule 12(b)(1)

Defendants move to dismiss the Amended Complaint, in part, pursuant to Rule 12(b)(1),

asserting that the Court lacks subject matter jurisdiction over Plaintiff's claims. The Plaintiff has

the burden of proving that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166

F.3d 642, 647 (4th Cir. 1999). When a defendant challenges subject matter jurisdiction pursuant

to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and

may consider evidence outside the pleadings without converting the proceeding to one for

summary judgment." *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United

States*, 945 F.2d 765, 768 (4th Cir. 1991)). The district court should grant the Rule 12(b)(1)

motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving

party is entitled to prevail as a matter of law." *Id.*

### B.  Motion to Dismiss Pursuant to Rule 12(b)(6)

Defendants also move to dismiss the Amended Complaint, in part, pursuant to Rule

12(b)(6), asserting that the Amended Complaint fails to state a claim upon which relief can be

granted. To state a claim that survives a Rule 12(b)(6) motion, a complaint, relying on only well-

pled factual allegations, must state at least a "plausible claim for relief." *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009). The "mere recital of elements of a cause of action, supported only by

conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)."

*Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). To determine whether a claim has

crossed "the line from conceivable to plausible," the court must employ a "context-specific

inquiry," drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 679–80.

When performing this inquiry, the court accepts "all well-pled facts as true and construes these

facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), nor must it agree with legal conclusions couched as factual allegations, *Iqbal,* 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009).

## III.   DISCUSSION

### A.  Claims Against the United States and DOD

#### 1.  FTCA Claims (Counts I and II) – The *Feres* Doctrine[2]

In Counts I and II, Colon seeks to hold the United States liable under the FTCA for the acts of Kassop and Berkowitz. The Court has no subject matter jurisdiction to hear these claims because each is barred by the *Feres* doctrine. Accordingly, Counts I and II are dismissed under Rule 12(b)(1).

The *Feres* doctrine precludes service members from suing the United States government under the FTCA for injuries that "arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146 (1950). There are three broad rationales underlying the *Feres* doctrine. "First, the relationship between the Government and members of its armed forces is distinctively federal in character." *United States v. Johnson*, 481 U.S. 681, 689 (1987) (citing

---

[2] The United States provides the following alternative arguments: 1) Count I is barred against Kassop's conduct because he was not "acting within the scope of his office or employment" when engaging in the alleged tortious conduct, ECF No. 26-1 at 11 (citing 28 U.S.C. § 1346(b)); 2) Counts I and II are barred as related to Berkowitz's conduct because Colon only presented a claim to the DOD for Kassop's alleged tortious conduct and therefore failed to exhaust her administrative remedies for Berkowitz's alleged tortious conduct *Id.* at 9 (citing 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2(a)); 3) Count II is barred because the United States' management of the Army's health records database is a discretionary function for which the United States cannot be liable under the FTCA. *Id.* at 15 (citing *United States v. Gaubert,* 499 U.S. 315 (1991); *Holbrook v. United States,* 673 F.3d 361, 345 (4th Cir. 2012)). Because the Court will dismiss Counts I and II for lack of subject matter jurisdiction under the *Feres* doctrine, the Court need not address these alternative arguments herein.

*Feres*, 340 U.S. at 143; *United States v. Standard Oil Co.*, 332 U.S. 301, 305 (1947)). "Second, the existence of . . . generous statutory disability and death benefits is an independent reason why the *Feres* doctrine bars suit for service-related injuries." *Johnson*, 481 U.S. at 689. Third, suits for service-related injuries are the "types of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Id.* at 690 (quoting *United States v. Shearer*, 473 U.S. 52, 59 (1985)).

Although it is useful to keep these rationales in mind, the absence of one or more of them is no reason to hear an FTCA claim against the government where *Feres* immunity would otherwise be appropriate. Indeed, the Fourth Circuit has said the sole task of a lower court deciding whether to apply *Feres* "is to assess whether appellant's injuries *arose out of activity incident to service*." *Stewart v. United States*, 90 F.3d 102, 104 (4th Cir. 1996) (emphasis in original). "In making this determination, [courts should be] mindful that, since its inception, the *Feres* doctrine has been broadly and persuasively applied by federal courts . . . . Indeed, the Supreme Court has consistently reaffirmed the *Feres* doctrine and has sharply limited the ability of members of the uniformed services to recover damages under the FTCA." *Id.* (internal citations omitted). "In recent years the Supreme Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military." *Id.* at 105 (internal citations omitted) (emphasis in original).

"In the nearly 70 years since the decision, *Feres* and its progeny have failed to produce a specific element-based or bright-line rule regarding what type of conduct is incident to service." *Aikens v. Ingram*, 811 F.3d 643, 650 (4th Cir. 2016) (internal citations omitted). "Where a complaint asserts injuries that stem from the relationship between the plaintiff and the plaintiff's

service in the military, the incident to service test is implicated." *Id.* at 651 (internal citations omitted). Put simply, a service member is injured "incident to service" when he is injured "because of his military relationship with the Government." *See Johnson*, 481 U.S. at 689 ("Where a service member is injured incident to service—that is, because of his military relationship with the Government . . .").

Here, there can be no doubt that Colon's injuries arose out of "activity incident to service." Specifically, her injuries arose out of her treatment by military doctors at military medical installations—treatment she received solely because she was a member of the military. The allegedly tortious conduct in Count I occurred at the hands of two military doctors. These doctors allegedly accessed the same electronic medical record system to find Colon's private medical information that other military doctors utilized when treating Colon while she was an active member of the military. The doctors then allegedly disclosed that information to another member of the military—an individual with whom Colon was in a custody dispute stemming from a relationship that took place while both were active members of the military. The allegedly tortious conduct in Count II occurred at the hands of the Secretary of Defense, who allegedly breached his duty to exercise reasonable care in ensuring that military employees only access and disclose records from the military's electronic medical record system when they have authorization to do so. The Secretary of Defense's negligence allegedly created the opportunity for the two military doctors to engage in the conduct alleged in Count I. In other words, the tortious acts alleged in Counts I and II were committed by active members of the military who used the military's electronic medical record system to cause Colon injuries she would never have incurred but for her status as a member of the military. For these reasons, Colon's injuries

arose out of "activity incident to service" and her FTCA claims against the United States are therefore barred by the *Feres* doctrine.

Colon raises two primary arguments to the contrary, each of which fails. First, she argues that her injury was not "incident to service" because the injury itself did not occur until after she left the military. Second, she argues that none of the three rationales underlying the *Feres* doctrine are present.

First, the fact that Colon's injury did not occur until after she left the military is irrelevant. Indeed, the Fourth Circuit has explicitly stated: "the focus of *Feres is not upon when the injury occurs* or when the claim becomes actionable, rather it is concerned with when and under what circumstances the negligent act occurs." *Kendrick v. United States*, 877 F.2d 1201, 1203–04 (4th Cir. 1989) (internal citation omitted) (emphasis added). And while Berkowitz's alleged unauthorized access occurred in 2015, after Colon's discharge, the access was still incident to her service because it related to the use and management of her active duty medical records by a military doctor, the control of which is left to "military discipline and decisionmaking." *See Cioca v. Rumsfeld*, 720 F.3d 505, 515 (4th Cir. 2013) ("where a complaint asserts injuries that stem from the relationship between the plaintiff and the plaintiff's service in the military, the 'incident to service' test is implicated"); *see also Fianko v. U.S.*, No. PWG-12-2025, 2013 WL 3873226, at \*7–8 (D. Md. July 24, 2013) (noting that application of *Feres* in the Fourth Circuit bars post-discharge torts when "the adjudication of Plaintiff's tort claims unavoidably would involve the court in determining whether civilian and military members of the Army properly performed their duties.").

Second, whether the *Feres* rationales are present is also not controlling because Colon's injuries were "incident to service." *See Johnson*, 481 U.S. at 687–88 ("the *Feres* doctrine has

been applied consistently to bar all suits on behalf of service members against the Government based upon service-related injuries"); *United States v. Stanley*, 483 U.S. 669, 682–83 (1987) (rejecting "a test for liability that depends on the extent to which particular suits would call into question military discipline and decisionmaking" in favor of "the 'incident to service' test, [which] by contrast, provides a line that is relatively clear and that can be discerned with less extensive inquiry into military matters"); *Stewart*, 90 F.3d at 104 ("Our task, then, is to assess whether appellant's injuries *arose out of activity incident to service*. In making this determination, we are mindful that, since its inception, the *Feres* doctrine has been broadly and persuasively applied by federal courts.") (internal citation omitted) (emphasis in original).

In any event, two of the three *Feres* rationales are present. First, the "distinctively federal" relationship between the Government and members of its armed forces is at issue.[3] Second, resolving Colon's claims would involve the court in sensitive military affairs concerning how to appropriately operate and manage the military's electronic records system—decisions the Government makes not in isolation but within the context of a general strategy regarding the proper allocation of military resources. Although the third *Feres* rationale is not present because Colon cannot avail herself of "generous statutory disability and death benefits," that fact alone does not warrant hearing her FTCA claims.

Simply put, because Colon's injuries were "incident to service," the *Feres* doctrine bars her from asserting FTCA claims against the United States. Therefore, Counts I and II are dismissed.

---

[3] The Court in *Feres* noted that:

> [the FTCA] assimilates into federal law the rules of substantive law of the several states, among which divergencies are notorious. . . . To whatever extent state law may apply to govern the relations between soldiers or others in the armed forces and persons outside them or nonfederal governmental agencies, the scope, nature, legal incidents and consequence of the relation between persons in service and the Government are fundamentally derived from federal sources and governed by federal authority.

*Feres*, 340 U.S. at 142–44.

11

## 2. Privacy Act Claim (Count III)

Unlike Colon's FTCA claims, Colon's Privacy Act claim is not barred by the *Feres* doctrine. *See Cummings v. Department of the Navy*, 279 F.3d 1051, 1056–57 (D.C. Cir. 2002) ("Although judicial reluctance to impinge on military matters is understandable in many contexts, it is unjustified in this setting; as we have discussed, the Congress clearly *enlisted* the federal courts to inquire into potential military violations of the Privacy Act.") (emphasis in original).

The parties agree that the government has waived sovereign immunity and consented to be sued under the Privacy Act only where the plaintiff has suffered "actual damages." *See F.A.A. v. Cooper*, 566 U.S. 284, 299 (2012). The DOD contends, however, that Colon has not pled "actual damages." ECF No. 26-1 at 26–28.[4] But Colon's Amended Complaint states that she "suffered actual damages when she paid for medical services and transportation to and from medical services to address the trauma she suffered as a result of the intentional and/or willful disclosures of her private health records." ECF No. 19 ¶ 55. It also states that "as a result of Dr. Kassop and Dr. Berkowitz's violation of the Privacy Act, Plaintiff has suffered adverse and harmful effects and actual damages, including, but not limited to, mental distress, emotional trauma, fear of receiving medical treatment, embarrassment, humiliation, and costs for therapy sessions." *Id.* ¶ 56. Thus, Count III of the Amended Complaint clearly alleges both emotional damages and actual damages.

Colon cannot recover for any emotional damages suffered as a result of a Privacy Act violation. However, to the extent "she paid for medical services and transportation to and from medical services" and paid "costs for therapy sessions," "to address the trauma she suffered as a

---

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

result of the intentional and/or willful disclosures of her private health records," she can recover. The causation argument raised by the DOD, that Colon's therapy sessions were not caused by any violation of the Privacy Act, *see* ECF No. 26-1 at 27–28, may ultimately preclude Colon from recovering the actual damages she has pled. It does not, however, alter the fact that she has pled such damages. Accordingly, Count III of Colon's complaint survives to the extent she alleges she suffered actual damages as a result of a violation of the Privacy Act.

### B. Claims against Kassop and Berkowitz

#### 1. *Bivens* Claim (Count IV)

In Count IV, Colon attempts to bring a *Bivens* action against Kassop and Berkowitz based on alleged constitutional violations. The Court lacks subject matter jurisdiction to hear this claim because it is barred by an outgrowth of the *Feres* doctrine: the doctrine of intra-military immunity. Accordingly, Count IV is dismissed under Rule 12(b)(1).

Whereas the *Feres* doctrine prohibits servicemen from suing the government under the FTCA, the related doctrine of intra-military immunity prohibits servicemen from bringing suits for service-related injuries in other contexts. One such context is where a serviceman seeks to bring a *Bivens* action against another serviceman to redress an injury suffered "incident to service." In *Stanley*, 483 U.S. at 684, the Supreme Court unequivocally held: "no *Bivens* remedy is available for injuries that 'arise out of or are in the course of activity incident to service.'" (internal citation omitted). In light of *Stanley*, "the law is now settled that *Bivens* suits are never permitted for constitutional violations arising from military service, no matter how severe the

13

injury or how egregious the rights infringement." Erwin Chemerinsky, Federal Jurisdiction 622 (5th ed. 2007).[5]

For the reasons set forth above, Colon's injuries "arise out of activity incident to service." *See* Section III.A.1, *supra*. Therefore, the doctrine of intra-military immunity bars Colon from bringing a *Bivens* action based on her injuries. Accordingly, Count IV is dismissed.

### 2. State Law Claims (Counts V and VI)

#### i. Intra-Military Immunity

While the doctrine of intra-military immunity serves as an absolute bar to a plaintiff's *Bivens* action against fellow military personnel, the doctrine only bars state statutory or tort claims where a plaintiff's injury is "incident to service" *and* the defendant is sued for "performing a military act." *See Kenneally v. Bayer*, 760 F.Supp. 503, 505 (D. Md. 1990).

In imposing the "military act" requirement in *Kenneally*, Judge Ramsey relied on the Tenth Circuit's opinion in *Durant v. Neneman*, 884 F.2d 1350 (10th Cir. 1989). In *Durant*, the Tenth Circuit rightly acknowledged the distinction between the *Feres* doctrine and the intra-military immunity doctrine. *Id.* at 1352 ("cases in which liability is asserted by servicemen against military actors for acts committed within the context of military service" are not "true *Feres* cases because the claims asserted are not founded upon the FTCA and the liability of the United States is not implicated."). The Tenth Circuit recognized that the intra-military immunity doctrine is based on only one of the rationales underlying *Feres*: courts should not interfere with

---

[5] In addition to the intra-military immunity doctrine, the Supreme Court has made it clear that courts should not extend *Bivens* to new contexts where "Congress has provided what it considers adequate remedial mechanisms for constitutional violations," or where there are "special factors counseling hesitation." *Schweiker v. Chilicky*, 487 US. 412, 423 (1988). Here, the Privacy Act provides an adequate remedial mechanism for Colon's constitutional violations. *See, e.g., Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008) ("The failure of the Privacy Act to provide complete relief to [plaintiff], however, does not undermine its status as a 'comprehensive scheme' that stops us from providing additional remedies under *Bivens*."). Further, "a *Bivens* action arising from a service-connected injury is foreclosed by 'special factor counseling hesitation.'" *United States v. Stanley*, 483 U.S. 669, 705 (1987) (internal citation omitted).

14

sensitive military affairs because doing so risks military discipline and effectiveness. *Id.* at 1353 (citing *Chappell v. Wallace*, 462 U.S. 296 (1983)). Indeed, when one serviceman sues another serviceman, the distinctively federal relationship between the Government and members of its armed forces is not implicated, nor can the serviceman avail himself of a generous system of statutory disability and death benefits. The Tenth Circuit also recognized that although "evolving jurisprudence has created a zone of protection for military actors, immunizing actions and decisions which involved military authority from scrutiny by civilian courts," "this zone was never intended to protect the *personal acts* of an individual when those acts in no way implicate the function or authority of the military." *Durant*, 884 F.2d at 1353 (emphasis added).

Recognizing these facts, the Tenth Circuit imposed an additional requirement for invoking intra-military immunity where one serviceman brings a common law tort claim against another serviceman: the defendant must be sued for performing a "military act." *Id.* at 1354. Although the Tenth Circuit was the first to explicitly adopt this requirement, it noted that other courts had implicitly imposed the same requirement. *See id.* ("courts have granted immunity to persons whose *military authority* is the basis for a plaintiff's claim of liability") (emphasis added).

The Fourth Circuit has never explicitly adopted the "military act" requirement of *Durant* and *Kenneally*. However, it has done so implicitly. In *Trerice v. Summons*, 755 F.2d 1081, 1084–85 (4th Cir. 1985), where the Fourth Circuit held that *Feres* barred a common law tort claim between enlisted military personnel and their superiors, the court noted that the defendant was engaged in a military—rather than a personal—act. In that case, plaintiff's superior was sued for punishing plaintiff's minor infraction unduly harshly, which allegedly led to plaintiff's death. *Id.*

The punishment handed down by the naval officer in his supervisory capacity—unduly harsh or not—was unequivocally a "military act" and the court was reluctant to disturb it. *Id.* at 1084.

Moreover, in *each and every* case cited in *Trerice*, the defendant was sued for engaging in a military act. In *Bass v. Parsons*, 577 F.Supp. 944 (S.D.W.V. 1984), defendants were Army doctors. *Id.* at 945. Plaintiff was injured during basic training and sought medical treatment. *Id.* He subsequently sued the Army doctors for their alleged negligence. *Id.* at 946. The doctors' treatment of plaintiff's military injury was unequivocally a "military act." In *Sigler v. LeVan*, 485 F.Supp. 185 (D. Md. 1980), plaintiffs were the family members of a former counterintelligence agent in the Army. *Id.* at 188. Plaintiffs sued various military officials for actions leading to the agent's death. *Id.* Plaintiffs alleged that after defendants discovered the agent was planning to write a book exposing confidential information, they interrogated him extensively for days, ultimately causing his death. *Id.* at 188–89. Whether the interrogation violated the law, the military officials clearly engaged in such conduct in their military—rather than their personal—capacities. Accordingly, they were each engaged in a "military act." In *Mollnow v. Cotton*, 716 F.2d 627 (9th Cir. 1983), defendants were plaintiff's superiors in the Air Force. They were sued for ignoring plaintiff's warnings regarding the safety of a jet that subsequently crashed. *Id.* at 628. Plaintiff's superiors' decision to exercise their discretion by ignoring plaintiff's warning was unequivocally a "military act." In *Lewis v. United States*, 663 F.2d 889 (9th Cir. 1981), plaintiff was a Marine who died in a plane crash, and plaintiff's estate sought to sue the servicemen who maintained, operated, and controlled the aircraft. *Id.* at 890. In maintaining, operating, and controlling the aircraft those individuals were also clearly engaged in a "military act." Finally, in *Bailey v. Van Buskirk*, 345 F.2d 298 (9th Cir. 1965), defendants were army medical surgeons. Plaintiff was injured and went to the surgeons to be operated upon. *Id.* at

298. He subsequently sued them for their alleged negligence. *Id.* The surgeons' treatment of plaintiff's military injury was unequivocally a "military act." These cases confirm that the Fourth Circuit has implicitly adopted the requirement adopted explicitly in *Durant* and *Kenneally*: a serviceman can invoke intra-military immunity to bar a common law tort suit brought by another serviceman *if* he is sued for committing a "military"—as opposed to a personal—"act."

Here, neither Kassop nor Berkowitz is being sued for performing a "military act." Instead, each is being sued for accessing and sharing Colon's medical records as a favor to Wollenburg, with whom each had a personal relationship. The Amended Complaint alleges that each doctor did this favor not as part of his military duties, but instead out of a desire to help Wollenburg. Indeed, Colon alleges that Kassop accessed and shared her confidential health records because he wanted to help Wollenburg, who was his close friend, roommate, and a groomsman in his wedding. ECF No. 19 ¶ 16. Colon alleges that Berkowitz directed his subordinates to access, view and print Colon's medical records because he too wanted to help Wollenburg, who was his patient. *Id.* ¶ 20. Because the Amended Complaint alleges that each of the doctors acted in his personal capacity—and outside the scope of his military authority—there is no rationale for affording either immunity. Regulating the doctors' conduct would not involve courts in sensitive military affairs or risk interfering with military discipline and effectiveness. Instead, it would prevent military doctors from using their privileged access to the military electronic records system for private aims. In short, because Kassop and Berkowitz are being sued for performing personal—rather than military—acts, they cannot invoke the doctrine of intra-military immunity in order to bar Colon from bringing Count VI.

## ii.     Federal Enclave Doctrine

While the doctrine of intra-military immunity does not bar Colon's state law claims, the

Federal Enclave doctrine does. Specifically, the alleged MCMRA violations and negligent access

and disclosure of protected health information occurred on two different "federal enclaves,"

where such causes of action are not applicable. Accordingly, Counts V and VI are dismissed

under Rule 12(b)(6).

Article I of the Constitution states Congress shall have the power:

> to exercise Legislation in all Cases whatsoever over such District[s] . . . as may,
> by Cession of particular States . . . become the Seat of the government of the
> United States, and to exercise like authority over all Places purchased by the
> Consent of the Legislature of the State in which the Same shall be, for the
> Erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings.

U.S. Const. Art. I, § 8, cl. 17. This constitutional provision has given rise to the federal enclave

doctrine. Generally speaking, the federal enclave doctrine establishes that the federal government

obtains the right to choose whether state or federal law governs a territory from the time it exerts

exclusive jurisdiction over that territory.

Determining whether application of a particular state law is barred by the federal enclave

doctrine requires two steps. First, the Court must determine whether the conduct at issue

occurred on a federal enclave. "The United States acquires exclusive jurisdiction over a federal

enclave if it acquires the land by consent of the state legislature." *See Bouthner v. Cleveland*

*Const. Inc.*, No. RDB-11-224, 2011 WL 2976868, at *2 (D. Md. July 21, 2011) (citing *Paul v.*

*United States*, 371 U.S. 245, 267 (1963)). Second, where it is established that the conduct

occurred on a federal enclave, the Court must determine whether the federal government has

decided to make the particular state law at issue applicable on that federal enclave. The general

rule for identifying whether a state law is applicable on a federal enclave is as follows: a state

law in effect at the time of cessation continues in effect as long as it does not conflict with federal purposes, but a subsequent state law has no effect unless (1) at the time of cessation the state specifically retained jurisdiction over the subject matter at issue or (2) Congress specifically authorized the enforcement of the state law on the federal enclave. *See, e.g., Stokes v. Adair*, 265 F.2d 662, 665 (4th Cir. 1959); *Upstate Citizens for Equal., Inc. v. United States*, 841 F.3d 556, 571 (2d Cir. 2016); *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1235 (10th Cir. 2012); *Cooper v. S. Cal. Edison Co.*, 170 Fed. Appx. 496, 497 (9th Cir 2006); *Koren v. Martin Marietta Servs.*, 997 F. Supp. 196, 202 (D.P.R. 1998).

In this case, the parties agree that the Maryland legislature ceded both Fort Meade and the Walter Reed Medical Center to the United States and that both territories are therefore federal enclaves. *See* ECF Nos. 27-1 at 13–14; 28 at 1; 34 at 24. They disagree about whether the federal government has decided to make the state laws at issue applicable on these two federal enclaves. Maryland transferred jurisdiction over Fort Meade in 1906. *See Baltimore Gas and Elec. Co. v. United States*, 133 F. Supp. 2d 721, 742 (D. Md. 2001). It transferred jurisdiction over the Walter Reed Medical Center—formerly known as the National Naval Medical Center—in 1938. *See Bouthner*, 2011 WL 2976868 at *2; *United States v. Collins*, No. 05-1387M, 2006 WL 278548 at *1 (D. Md. Jan. 31, 2006); 61 Op. Atty Gen. Md. 441, 1976 Md. AG LEXIS 120, at *1–2 (1976). The MCMRA was enacted in 1990. *See* Md. Code Ann. Health Gen., § 4-301 *et seq.* No case has been identified where the tort of negligent access and disclosure of protected health information has been recognized in Maryland. Therefore, these claims only apply on these federal enclaves if Congress specifically authorized their enforcement or if Maryland specifically retained jurisdiction over the subject matter at issue. Colon advances both arguments but each fails.

First, Colon claims Congress specifically authorized the enforcement of the state laws at issue when it passed 28 U.S.C. § 5001. But Colon fails to recognize that this statute, formerly 16 U.S.C. § 457, likely pertains only to wrongful death and survival actions or, at most, physical injury to one's person. *See James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 100 (1940) (citing to 16 U.S.C. § 457 as related to "rights of action for accidental death by negligence or wrongful act"); *Ferebee v. Chevron Chem. Co.*, 736 F.2d 1529, 1533 (D.C. Cir. 1984) (citing 16 U.S.C. § 457 and noting that "the substantive elements of the cause of action created by the federal wrongful death act are thus defined by reference to state law"); *Morgan v. United States*, 709 F.2d 580, 582 (9th Cir. 1983) (noting that 16 U.S.C. § 457 is "merely a federal wrongful death statute, paralleling similar state statutes, designed to give a right of recovery for deaths occurring on property within the exclusive jurisdiction of the United States"). *But see Shurow v. Gino Morena Enterprises, LLC*, No. 3-16-cv-02844-L-KSC, 2017 WL 1550162, at *3 (S.D. Ca. May 1, 2017) (finding that 28 U.S.C. § 5001(b) covers "physical injury sustained by one's person").

With only minor changes, 28 U.S.C. § 5001 tracks the language of its predecessor, 16 U.S.C. § 457. 28 U.S.C. § 5001(a) establishes that a state's wrongful death statute applies where death occurs on a federal enclave. 28 U.S.C. § 5001(b) clarifies that "in a civil action brought to recover on account of an injury sustained in a place described in subsection (a), the rights of the parties shall be governed by the law of the State in which the place is located." Plaintiff argues that subsection (b) should be read to mean that *all* state tort law and state statutes apply on federal enclaves. But to read subsection (b) that way would be to allow it to swallow the federal enclave doctrine whole, which there is no indication Congress wished to do when it passed 28 U.S.C. § 5001. *See Shurow*, 2017 WL 1550162, at *3 (noting that interpretation covering any injury would be co-extensive with Article III standing and that "[s]uch a result would be

inconsistent with the more than eighty years of Federal Enclave Doctrine jurisprudence . . .").

Colon does not assert either a wrongful death or a survival claim or a physical injury to the

person.[6] Therefore, 28 U.S.C. § 5001 does not authorize the enforcement of her state law claims

on these two federal enclaves.

Second, Colon claims Maryland specifically retained jurisdiction over the subject matter

at issue when it passed what is now Md. Code. Ann., Gen. Prov., § 6-201. The initial version of

this law became effective on October 1, 1984. *See id.* ("Former State Government § 14-102,

added by Acts 1984, c. 284, § 1, eff. Oct. 1, 1984."). For one, a state statute promulgated *after*

the cessation of a federal enclave cannot possibly be the vehicle by which a state retains

jurisdiction over a particular subject matter on that federal enclave. Indeed, once the federal

enclave has been ceded, the *federal government* has exclusive authority to determine the choice

of law on that federal enclave. Moreover, § 6-201 by its own terms "does not affect the

jurisdiction and authority of the State over land, or persons, property, and transactions on the

land, that the United States or a unit of the United States acquired on or before May 31, 1943."

Both Fort Meade and the Walter Reed Medical Center were ceded to the United States prior to

May 31, 1943. Therefore, this statute cannot possibly affect the applicability of state law on these

federal enclaves.

Thus, (1) the MCMRA and the tort of negligent access and disclosure of protected health

information are state laws not in existence at the time Fort Meade and the Walter Reed Medical

Center were ceded by Maryland to the United States; (2) Congress did not specifically authorize

the enforcement of either of these state laws on either Fort Meade or the Walter Reed Medical

Center; and (3) Maryland did not specifically retain jurisdiction over the subject matter covered

---

[6] As indicated above, the court in *Shurow*, and others, have extended § 5001(b) to cover "physical injury sustained by one's person." *See Shurow*, 2017 WL 1550162, at *3. This broader interpretation would still not cover the injury at issue here, so this Court need not resolve whether § 5001(b) can be extended that far.

by these state laws when it ceded Fort Meade and the Walter Reed Medical Center to the United States. For these reasons, neither the MCMRA nor the novel tort Colon asserts is applicable on either of these federal enclaves. Accordingly, Counts V and VI are dismissed.[7]

## IV. CONCLUSION

For the foregoing reasons, the United States and DOD's Motion to Dismiss, ECF No. 26, is granted in part, and denied in part. Kassop and Berkowitz's Motions to Dismiss, ECF Nos. 27 and 28, are granted. A separate Order follows.

Dated: March 13, 2018

GEORGE J. HAZEL
United States District Judge

---

[7] Similar to claims against the United States, because the Court finds that the Federal Enclave Doctrine bars Colon's claims against Kassop and Berkowitz, the Court need not address their alternative arguments, including: whether the DOD directive preempts application of the MCMRA against Kassop and Berkowitz, ECF No. 27-1 at 13; Colon adequately alleged that Berkowitz acted in bad faith as required by the MCMRA, *id.* at 18; the MCMRA provides an exclusive statutory remedy such that Colon cannot bring a common-law tort claim, *id.*; the FTCA's judgment bar forecloses Colon's claims against Kassop and Berkowitz, *id.* at 21.